Argued and submitted May 9, 2005, decision of Court of Appeals reversed;
judgment of circuit court affirmed June 22, 2006

## STATE OF OREGON,
by and through its Department of Transportation,
*Respondent on Review,*

*v.*

## Walter B. STALLCUP,
*Petitioner on Review,*

*and*

## FLEET BUSINESS CREDIT CORPORATION,
fka Sanwa Business Credit Corporation,
a Delaware corporation,
*Respondent.*

## (CC 000242E2; CA A117839; SC S51873)

138 P3d 9

E. Michael Connors, Davis Wright Tremaine LLP, Portland, argued the cause for petitioner on review. With him on the brief were Jeffrey J. Schick and Christopher P. Koback.

Jas. Jeffrey Adams, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Carson,** Chief Justice, and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

CARSON, J.

** Chief Justice when case was argued.
*** Chief Justice when decision was rendered.

## CARSON, J.

The issue in this condemnation case is whether ORS 35.346(5)(b) requires the parties to a condemnation action to disclose every written opinion of value prepared by an appraiser, including draft appraisals and other preliminary reports.[1] After the condemnation trial below, the state moved, pursuant to ORCP 71 B and C, to set aside the judgment based upon newly discovered evidence that petitioner had not disclosed a certain report that, the state claimed, was an "appraisal" subject to mandatory disclosure under ORS 35.346(5)(b). The trial court denied that motion, because it concluded that the report was not an "appraisal" subject to mandatory disclosure. The Court of Appeals reversed that ruling, concluding that the report was an "appraisal" for purposes of ORS 35.346(5)(b) because it was a "written opinion by a qualified person regarding valuation of the condemned property * * *." *Dept. of Transportation v. Stallcup*, 195 Or App 239, 250, 97 P3d 1229 (2004). We allowed review and now reverse the decision of the Court of Appeals and affirm the judgment of the trial court.

The following facts are undisputed. Petitioner owns property on which a fast-food restaurant is situated. The state sought to acquire part of petitioner's property for a road improvement project. The state and petitioner were unable to agree upon the amount that the state should pay for the property taken, and the state subsequently initiated a condemnation action to acquire the property. In its complaint, the state asserted that the property that it sought to acquire had a value of $70,800.

Petitioner hired an appraiser who, after inspecting the property, sent petitioner a report entitled "Complete Summary Appraisal Report" and dated September 26, 2000. The report was unsigned; it lacked photographs, tables, and maps to which the text of the report referred; and it had the

---

[1] ORS 35.346(5)(b) provides:

"In the event the owner and condemner are unable to reach agreement and proceed to trial or arbitration as provided in subsection (6) of this section, each party to the proceeding shall provide to every other party a copy of every appraisal obtained by the party as part of the condemnation action."

word "draft" handwritten on the cover sheet.[2] That report also provided two different value estimates for the property. The first estimate set the value at $80,591, based upon the assumption that the taking would not affect the restaurant's drive-through window. The second estimate set the value at $355,082, based upon the assumption that the drive-through window would be affected. Petitioner did not disclose that report to the state. The state asserts, however, that petitioner did rely upon it in filing his answer in the condemnation action, alleging that the property to be condemned was worth $355,082.

Petitioner's appraiser later produced two more reports. One was entitled "Complete Summary Appraisal Report" and dated April 18, 2001; the other was entitled "Complete Appraisal Summary Report" and dated November 13, 2001. Unlike the September 2000 report, however, both the later reports contained the photographs, tables, and maps that were not present in the September 2000 report; both were signed by the appraiser; and neither was marked "draft." The April 2001 report estimated the value of the property to be condemned to be $345,082, and the November 2001 report estimated the value of that property to be $611,511. Petitioner disclosed both the April 2001 and the November 2001 reports.

Prior to trial, the state offered to settle the condemnation action by paying petitioner $117,500 for the property at issue. Petitioner rejected that offer and proceeded to trial, where the jury found that he was entitled to $135,000. Because the amount awarded at trial exceeded the state's highest settlement offer, petitioner was entitled to recover his reasonable attorney fees and expenses as provided in

---

[2] Petitioner asserts in this court, as he did in the Court of Appeals, that the copy of the report that he received from the appraiser had the word "draft" stamped in red ink on multiple pages and that the copy that the appraiser retained had the word "draft" handwritten on it. Petitioner further asserts that the trial court viewed the stamped copy in deciding that the report was only a draft and was not subject to mandatory production. However, the trial court does not state specifically which copy it based its decision upon. The record in this case contains only the copy of the report with the word "draft" handwritten on the cover sheet. We base our decision upon the copy contained in the record.

ORS 35.346(7).[3] To obtain those fees, petitioner filed a fee petition and supporting documentation.

While reviewing petitioner's fee petition, the state discovered that petitioner's appraiser had billed petitioner for four "complete summary appraisal reports," while petitioner had produced only two appraisals.[4] ORS 35.346(5)(b) requires each party to a condemnation action to produce "a copy of every appraisal obtained by the party[.]" Citing ORS 35.346(5)(b), the state moved to set aside the judgment under ORCP 71 B and C,[5] alleging that newly discovered evidence showed that petitioner had failed to produce "every appraisal." Consistently with that position, the state argued that theSeptember 2000 report was an "appraisal" subject to mandatory disclosure under ORS 35.346(5)(b). The trial court rejected that argument, concluding that ORS 35.346(5)(b) did not require disclosure of documents that were merely drafts. The trial court further concluded that the September 2000 report was a draft and not an "appraisal"

---

[3] ORS 35.346(7) provides, in part:

"If a trial is held or arbitration conducted for the fixing of the amount of compensation to be awarded to the defendant owner or party having an interest in the property being condemned, the court or arbitrator shall award said defendant costs and disbursements including reasonable attorney fees and reasonable expenses as defined in ORS 35.335(2) in the following cases, and no other:

"(a) If the amount of just compensation assessed by the verdict in the trial exceeds the highest written offer in settlement submitted by condemner to those defendants appearing in the action at least 30 days prior to commencement of said trial[.]"

[4] The Court of Appeals, apparently relying upon those billing entries, incorrectly found that petitioner's appraiser, in fact, had sent petitioner four reports. However, only three reports appear in the record. Furthermore, the trial court and both parties state that there were only three reports. Given that record, the trial court reasonably could have found that there were only three reports: a September 2000 report, an April 2001 report, and a November 2001 report. Petitioner's appraiser explained that the four billing entries did not refer to additional final appraisal reports, but rather all billed time related to the project had the "tag-line" "complete summary appraisal report" as a result of the appraiser's billing system.

[5] ORCP 71 B allows a court, upon motion by a party, to relieve that party from a judgment because of, among other reasons, "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 64 F[.]" ORCP 71 C provides that a court retains inherent power "to modify a judgment within a reasonable time, or * * * to entertain an independent action to relieve a party from a judgment[.]"

subject to mandatory disclosure; therefore, the trial court denied the state's motion to set aside the judgment.[6]

On appeal, the state argued that the trial court had erred in concluding that the September 2000 report was not an "appraisal" subject to mandatory disclosure under ORS 35.346(5)(b) and in failing to grant the state's motion to set aside the judgment. In evaluating the validity of the state's argument, the Court of Appeals sought to discern the legislature's intended meaning of the term "appraisal" as it is used in ORS 35.346(5)(b). The Court of Appeals first looked to the dictionary definition of the term "appraisal" and noted that "appraisal" is defined as "a valuation of property by the estimate of an authorized person[.]" *Stallcup*, 195 Or App at 249 (quoting *Webster's Third New Int'l Dictionary* 105 (unabridged ed 1993)). The Court of Appeals further noted that, in its view, there were no related statutory definitions or other contextual sources that defined the term "appraisal." *Id.* However, to quell any remaining uncertainty regarding the intended meaning of "appraisal," the Court of Appeals examined the legislative history of ORS 35.346(5)(b). *Id.* From that history, the Court of Appeals reasoned that the legislature, by amending ORS 35.346 in 1997, had intended to facilitate "full reciprocal pretrial disclosure of expert reports regarding valuation." *Id.*

Therefore, the Court of Appeals determined that the legislative history of ORS 35.346(5)(b) supported using the broad dictionary definition of "appraisal" in interpreting that statute. *Id.* at 250. The Court of Appeals concluded that an "appraisal" was "any written opinion by a qualified person regarding valuation" and that the September 2000 report "fell within the scope of that definition." *Id.* Based upon that conclusion, the Court of Appeals held that the trial court had erred in deciding that the September 2000 report was not an "appraisal" and in denying the state's motion to set aside the judgment. *Id.* at 251-54.

On review, our task is to determine the correct interpretation of the term "appraisal" in ORS 35.346(5)(b). In interpreting a statute, this court must give effect to the legislature's intent. *PGE v. Bureau of Labor and Industries*, 317

---

[6] The trial court also granted petitioner's petition for attorney fees.

Or 606, 610, 859 P2d 1143 (1993). To do so, we begin our analysis by considering the text and context of the statute in question. *Id.* at 610-11. We give "words of common usage their plain, natural, and ordinary meaning[s]," and we give words that have well-defined legal meanings those meanings. *Norden v. Water Resources Dept.*, 329 Or 641, 645, 996 P2d 958 (2000). Statutory context "includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the law was enacted[.]" *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998) (internal citations omitted). In construing a statute, "we do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole." *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997). Furthermore, the "use of the same term throughout a statute indicates that the term has the same meaning throughout the statute[.]" *PGE*, 317 Or at 611 (internal citation omitted).

■       As stated previously, ORS 35.346(5)(b) provides, in part:

> "In the event the owner and condemner are unable to reach agreement and proceed to trial * * *, each party to the proceeding shall provide to every other party a copy of every appraisal obtained by the party as part of the condemnation action."

Initially, we agree with the Court of Appeals that the reference in the statute to "a copy" indicates that ORS 35.346(5)(b) requires disclosure of only written "appraisals" and not oral ones. We also agree with the Court of Appeals that the term "appraisal" is not defined explicitly in ORS 35.346 or in any other statute.

However, we do not agree with the Court of Appeals' sole reliance on the dictionary definition of the term "appraisal" to determine the legislature's intended meaning.[7]

---

[7] In common parlance, an "appraisal" is "a valuation of property by the estimate of an authorized person[.]" *Webster's Third New Int'l Dictionary* 105 (unabridged ed 2002). The Court of Appeals, relying upon the same dictionary definition, interpreted the term "appraisal" to mean "any written opinion by a qualified person regarding valuation." *Dept. of Transportation v. Stallcup*, 195 Or App 239, 250, 97 P3d 1229 (2004).

In doing so, the Court of Appeals failed to consider the context in which the legislature used the term "appraisal." Specifically, several provisions of ORS chapter 674 provide context that sheds light on the meaning of the term "appraisal," because ORS chapter 674 regulates the practice of real estate appraisal activity within Oregon. *See* ORS 674.020(1) (stating that a purpose of chapter 674 is to require that all real estate appraisals be performed in accordance with uniform standards). Furthermore, other subsections of ORS 35.346 provide additional context. Viewing the text of ORS 35.346(5)(b) in its proper context reveals facets to the definition of the term "appraisal" that are significant to our interpretive task.

ORS 674.100(1)(a) (1999), *amended by* Or Laws 2005, ch 254, § 3, provides that "[n]o person shall engage in, carry on, advertise or purport to engage in or carry on real estate appraisal activity within this state without first obtaining certification or licensure as provided in ORS 674.310."[8] ORS 674.100(1)(b) provides that "[r]eal estate appraisal activity is the preparation, *completion* and *issuance*[9] of an opinion as to the value on a given date or at a given time of real property * * *." (Emphasis added.) Given that an "appraisal" is the product of "real estate appraisal activity" under ORS 674.100(1)(a) (1999), only a licensed or certified person may produce an opinion of value that is an "appraisal" for purposes of Oregon law. Also, under ORS 674.100(1)(b), the licensed or certified person must prepare, complete, and issue the opinion of value to the party seeking the valuation for the opinion to be an "appraisal." Therefore, when considered within the context of ORS 674.100(1)(a) (1999) and ORS 674.100(1)(b), an "appraisal" is a prepared, completed, and issued opinion of value made by a person certified or licensed to issue such opinions.

---

[8] We apply the 1999 version of ORS 674.100(1)(a) because that is the provision that was in effect when petitioner's appraiser prepared and sent petitioner the September 2000 report. The 2005 amendments to ORS 674.100(1)(a) did not alter materially the substance of that statute.

[9] We note that, in this context, the term "issuance" means "the act of officially putting forth or getting out or printing * * * or promulgating * * *." *See Webster's* at 1201 (defining word "issuance" by reference to word "issue"). Use of that term indicates that the opinion of value must be officially released in its final form for the opinion to be an "appraisal." Use of such a term is inconsistent with reference to a mere draft.

An examination of ORS 35.346(2) lends further support to that interpretation of the term "appraisal."[10] If the property to be purchased or condemned is worth less than $20,000, then the second sentence of ORS 35.346(2) allows "the condemner, in lieu of a written appraisal," to give the property owner "a written explanation of the bases and method by which the condemner arrived at the specific valuation of the property." Because subsection (2) also contains the term "appraisal," we must interpret that term in a way that applies consistently in all subsections of ORS 35.346. *PGE*, 317 Or at 611.

Had the legislature intended the term "appraisal" to include all opinions of value, the "written explanation" allowed in ORS 35.346(2) would be an "appraisal"; it would not be "in lieu of" one. Such a construction would ignore the legislature's use of a different term within the same statute. *See State v. Keeney*, 323 Or 309, 316, 918 P2d 419 (1996) (holding that legislature intends different meanings when it uses different terms in a statute). That erroneous construction also would relegate the entire second sentence of ORS 35.346(2) to surplusage, in contravention of "this court's stated goal of giving effect to every provision of a statute." *Quintero v. Board of Parole*, 329 Or 319, 324, 986 P2d 575 (1999).

Finally, ORS 674.310(1)(a) (1999), *amended by* Or Laws 2005, ch 254, § 7, and *former* ORS 674.305(8) (1999),

---

[10] ORS 35.346(2) provides:

"The [condemner's] offer [to purchase the property] shall be accompanied by any written appraisal upon which the condemner relied in establishing the amount of compensation offered. If the condemner determines that the amount of just compensation due is less than $20,000, the condemner, in lieu of a written appraisal, may provide to the owner or other person having an interest in the property a written explanation of the bases and method by which the condemner arrived at the specific valuation of the property. The amount of just compensation offered shall not be reduced by amendment or otherwise before or during trial except on order of the court entered not less than 60 days prior to trial. An order for reduction of just compensation offered, pleaded by the condemner in the complaint or deposited with the court for the use and benefit of the owner pending outcome of the condemnation action, may be entered only upon motion of the condemner and a finding by clear and convincing evidence that the appraisal upon which the original offer is based was the result of a mistake of material fact that was not known and could not reasonably have been known at the time of the original appraisal or was based on a mistake of law."

*renumbered as* ORS 674.305(7) (2005), add additional context. ORS 674.310(1)(a) (1999) authorizes the Appraiser Certification and Licensure Board (the board) to "do all things necessary and convenient to carry into effect the provisions of [chapter 674] * * * and to regulate the activities of state licensed appraisers and state certified appraisers to ensure that all real estate appraisals conform to the law in effect on the date of the real estate appraisal activity." The board also has authority to "adopt rules necessary for the administration of [chapter 674]."[11] *Former* ORS 674.305(8). Pursuant to those grants of authority, the board adopted OAR 161-025-0060(1) (2001), requiring that "[a]ll appraisal reports shall be prepared in accordance with * * * the Uniform Standards of Professional Appraisal Practice [USPAP]." Additionally, OAR 161-002-0000(37) (2001) defines the USPAP as "the standards adopted and published by the Appraisal Standards Board of the Appraisal Foundation dated April 27, 1987, as amended January 1, 2000."[12]

■        We note that, although the Oregon Administrative Rules in question were not promulgated until after ORS 35.346(5)(b) was enacted, those rules did exist at the time that the relevant conduct occurred in this case. As such, they can—and, in this case, do—provide relevant context to aid in our interpretive task. The Court of Appeals thought otherwise, rejecting the use of those Oregon Administrative Rules based upon a misinterpretation of this court's decision in *Stull v. Hoke*, 326 Or 72, 79-80, 948 P2d 722 (1997). *See Stallcup*, 195 Or App at 249 n 7 (asserting that holding in *Stull* prohibits use of subsequently enacted provisions as context in construing statute). The Court of Appeals concluded that, under *Stull*, it could not consider those rules because they were "not promulgated until 1999, two years after the enactment of ORS 35.346(5)(b)." *Id.*

---

[11] As noted previously, a stated purpose of ORS chapter 674 is to require that all real estate appraisals be performed in accordance with uniform standards. ORS 674.020(1).

[12] We consider the 2001 editions of OAR 161-002-0000(37) and OAR 161-025-0060(1) because those were the provisions that were in effect when petitioner's appraiser prepared and sent petitioner the September 2000 report. *See* Oregon Bulletin, Volume 39, No 4, p 43-45 (April 2000) (stating that 2001 edition of OAR 161-025-0060 and OAR 161-002-0000(37) became effective February 29, 2000).

■    We do not agree that the Court of Appeals was hand-cuffed in that way. The later-enacted rules do not (and do not purport to) explain the legislature's intent in enacting ORS 35.346(5)(b); rather, they present a separate, valid source of law that supports the trial court's ruling here. Because no one argued, and nothing in those rules suggests independently, that the rules impermissibly altered the scope or meaning of ORS 35.346(5)(b), the Court of Appeals should have applied the rules in its determination of what the law requires to make an "appraisal" an "appraisal."

As explained above, various sources of law combine to define the term "appraisal." In light of all that relevant context, we hold that the term "appraisal," as used in ORS 35.346(5)(b), means a completed and issued opinion of value that complies with the requirements of the applicable Oregon Administrative Rules and is made by a person certified or licensed to issue such opinions.

We now apply that law to the facts of this case. As stated previously, OAR 161-025-0060(1) mandates that an "appraisal" conform with the requirements of the USPAP. Relevant provisions of the USPAP require, in part:

"(b)   The content of a Summary Appraisal Report must * * * at a minimum:

"* * * * *

"(xii)   include a signed certification in accordance with Standards Rule 2-3."

Appraisal Standards Board of the Appraisal Foundation, *Uniform Standards of Professional Appraisal Practice* 23, 26 (2000). USPAP Standards Rule 2-3 states, "Each written real property appraisal report must contain a signed certification * * *."[13] *Id.* at 28.

---

[13] Standards Rule 2-3 requires the appraiser to certify the following:

"[T]he statements of fact contained in this report are true and correct.

"[T]he reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

"I have no (or the specified) present or prospective interest in the property that is the subject of this report and no (or the specified) personal interest with respect to the parties involved.

The September 2000 report was labeled "Complete Summary Appraisal Report" but was not signed by petitioner's appraiser. According to the USPAP, the report was not complete, because it was unsigned and not certified. As such, the report did not comply with OAR 161-025-0060(1).

Furthermore, the September 2000 report lacked photographs, tables, and maps to which the text of the report referred. The omission of that information illustrates that the report was not complete.

Thus, as a matter of law, the September 2000 report was not an "appraisal" under ORS 35.346(5)(b), because it was not complete and because it did not comply with the requirements of the Oregon Administrative Rules. As such, it was not subject to mandatory disclosure under ORS 35.346(5)(b).[14]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

"I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

"[M]y engagement in this assignment was not contingent upon developing or reporting predetermined results.

"[M]y compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

"[M]y analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

"I have (or have not) made a personal inspection of the property that is the subject of this report. (If more than one person signs this certification, the certification must clearly specify which individuals did and which individuals did not make a personal inspection of the appraised property.)

"[N]o one provided significant real property appraisal assistance to the person signing this certification. (If there are exceptions, the name of each individual providing significant real property appraisal assistance must be stated.)"

Appraisal Standards Board of the Appraisal Foundation, *Uniform Standards of Professional Appraisal Practice* 28 (2000) (footnote omitted).

[14] This case does not require us to decide whether the September 2000 report would have been subject to discovery pursuant to a request for production of documents under ORCP 43 or would have been protected against discovery as trial preparation material, attorney work product, or material to which the attorney client privilege applied.