Argued and submitted May 23, motion to strike denied; affirmed on petition; reversed and remanded with instructions on cross-petition July 23, 1997

ALLIANCE FOR RESPONSIBLE LAND USE
IN DESCHUTES COUNTY,
Howard Paine and William Boyer,
*Petitioners - Cross-Respondents,*

*v.*

DESCHUTES COUNTY,
*Respondent,*

*and*

PMR DEV. CO., LLC,
*Respondent - Cross-Petitioner.*

(LUBA Nos. 96-145, 96-146; CA A96890)

942 P2d 836

Christine M. Cook argued the cause for petitioners - cross-respondents. With her on the briefs was Michael Collmeyer.

Liz Fancher argued the cause and filed the brief for respondent - cross-petitioner.

No appearance for respondent Deschutes County.

Before Deits, Chief Judge, and Edmonds and Haselton, Judges.

DEITS, C. J.

## DEITS, C. J.

Petitioners seek review, and respondent PMR Dev. Co. (respondent) cross-petitions for review, of LUBA's order remanding a Deschutes County decision to rezone certain property in accordance with respondent's application. The property is located within the City of Sisters urban growth boundary (UGB) but is outside the city's territorial limits. Therefore, the area is subject to county land use legislation governing the Sisters urban area, and the county, rather than the city, is the decisionmaker here. The county's decision changes the zone of the property from urban area reserve (UAR)[1] to two residential classifications of different densities (RS and RH) that are to apply respectively to different parts of the property.[2] We affirm on the petition and reverse on the cross-petition.

Petitioners contend that LUBA erred by upholding the county's conclusion that the rezoning was permissible under policy 3 of the Sisters urban area plan. Policy 3 provides:

"In order to assure the economic provision and utilization of future public facilities and services, the present city should develop at 75% capacity before expanding into the reserve area."

The parties agree that the term "present city" in the policy refers to the city as of 1979. Two inventories, one prepared in 1979 and the other in 1981, are appended to the plan, and both show the "buildable acreage" in the city as 417 acres. Respondent presented data to the county indicating that the area of the city as of 1979 was, at the most, 388 acres. The county governing body accepted that lower figure as the one against which the 75 percent development requirement

---

[1] Under the Sisters urban area plan, all land that is classified as "urban reserve" is "adjacent" to but outside of the city.

[2] A corresponding comprehensive plan amendment was enacted more or less simultaneously. It was not appealed to LUBA. The initial county decision on the zone change was made by a hearings officer, but the governing body adopted that officer's material findings and conclusions in enacting the ordinance at issue here that rezoned the property. Accordingly, we will treat the local decision throughout this opinion as that of the governing body. *See Derry v. Douglas County*, 132 Or App 386, 888 P2d 588 (1995).

of policy 3 should be measured. Petitioners contended to LUBA, and now contend in their first assignment to us, that the two appended inventories conclusively establish the relevant area and that the county erred by interpreting the plan policy as allowing the area to be defined by the alternative method.

■        LUBA noted that policy 3 does not specify either the area of the city or a method or source for ascertaining it, and that nothing in the two inventories or elsewhere in the plan purports to make the inventories the exclusive determinant of the city's area. LUBA therefore concluded that the county's interpretation of policy 3 as allowing the different method that respondent offered for calculating the area was not reversible under ORS 197.829(1) and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). We agree with LUBA that the county's interpretation was not "clearly wrong" and that it therefore must be upheld under *Clark*. *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 843 P2d 992 (1992). We accordingly reject petitioners' first assignment of error. They make one other assignment, but its success depends on that of the first. We affirm on the petition and turn to the cross-petition.

Respondent contends that LUBA erred in holding that certain findings were required by Standard e of section 23(3) of the Sisters urban area zoning ordinance and that the county had not made the necessary findings. Standard e requires that, after determining that there is a public need for a zone change of the kind in question,[3] the county must further determine:

> "That need will be best served by changing the classification of the particular piece of property in question as compared with other available property."

We quote LUBA's explanation for its holding at some length:

> "The county's findings do not expressly interpret what Standard [e] requires. The findings recite the benefits of

---

[3] The county determined that a public need for additional residential development and/or residentially-zoned property existed, and that determination is not questioned by either party.

changing the designation on the subject property. They also discuss the need for residential zoning of this property due to the constraints of existing RH designated property within the city. They do not, however, provide any comparison of the subject property to either other UAR-designated property or to other property within the city with zoning designations other than RH or RS. Petitioners argue, and we agree, that Standard [e] requires such a comparison.

"[Respondent] disputes that Standard [e] requires a comparison of other properties within the city. [Respondent] argues:

" '[T]he findings of need required for compliance with Policy 4 require proof of need for more residential land than presently available for development in the city. It would be illogical to look to the area that lacks an adequate supply of land for the additional residential development lands needed by the community. For these reasons, the comparison required by this section of the zoning ordinance must be made with other reserve lands which are theoretically capable of supplying additional, needed residential land.'

"The problem with [respondent's] argument is that it is not in accord with the language of Standard [e] and it does not take into account the possibility of rezoning land within the city to accommodate a need for more residential development. The language of Standard [e] requires a comparison of all other available property, not just other UAR-designated property.

"* * * * *

"In order to satisfy Standard [e], the county must compare the subject property to both other UAR-designated properties and to other properties identified by petitioners within the city to determine whether the public need will be best served by changing the zoning of the subject property as compared to the others."

The county's findings contain comparisons of the property in question both with other UAR-zoned property *and* with property—principally RH-zoned land—that is located within the city and that is designated and/or zoned other than UAR. The part of the county's order that deals

with Standard e and with related matters is extensive, covering almost four single-spaced typewritten pages. As we understand LUBA's holding, the principal deficiency it finds in the county's order is that the findings do not cover all of the sites within the city that petitioners asked to have compared with respondent's property. Petitioners also suggest, and LUBA *appears* to have agreed, that the findings are flawed in that their treatment of other UAR locations is not sufficiently site-specific in its focus and, rather than being comparative in its approach, it discusses the advantages of respondent's property generally without delineating the advantages and drawbacks of other properties.

The point of departure for LUBA's analysis was that the county's order does not contain an express interpretation of Standard e and, therefore, that LUBA itself was required to interpret the standard independently pursuant to ORS 197.829(2) and to determine whether the county's findings were adequate to satisfy the standard as LUBA interpreted it. It is important to emphasize that LUBA did not hold that the county's interpretation of the standard was reversible. Rather, LUBA concluded that the county had made *no* reviewable interpretation.

Respondent argues that LUBA erred both in the way that *it* interpreted Standard e and in concluding that the appealed decision does not contain a reviewable interpretation of the standard by the *county*. The two arguments together have a substantial bearing on LUBA's and our scope and method of review. If the county decision does contain a reviewable interpretation of the local provision, LUBA's and our review would be subject to the deferential standard of *Clark* and ORS 197.829(1)(a)-(c). However, if a local decision does not contain an interpretation of an applicable local provision, or no interpretation that suffices for review, then ORS 197.829(2) becomes applicable. It provides:

"If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such interpretation is inadequate for review, [LUBA] may make its own determination of whether the local decision is correct."

We have interpreted that statute to mean that, when a local governing body's land use decision lacks an essential interpretation of applicable local legislation—or lacks an interpretation that is adequate for review—LUBA and, in turn, this court, may interpret the legislation *ab initio* and independently, as part of the process of reviewing the local government's decision. *Johns v. City of Lincoln City*, 146 Or App 594, 600, 983 P2d 978 (1997); *Canfield v. Yamhill County*, 142 Or App 12, 19, 920 P2d 558 (1996). In such circumstances, the deferential standard of *Clark* and of ORS 197.829(1) is, of course, inapplicable, because there is no local interpretation to which deference can be accorded.

In *Weeks v. City of Tillamook*, 117 Or App 449, 844 P2d 914 (1992), decided after *Clark* but before the enactment of ORS 197.829(2), we held that, given the rationale of *Clark*, LUBA and the reviewing courts were required to remand local land use decisions that lacked essential interpretations of local legislation—or interpretations that were sufficient for review—in order, *inter alia*, to provide the local government with an opportunity to supply the missing interpretation. The local interpretation made on remand would then be subject to the deferential review standard in any later appeal from the decision. *See also Larson v. Wallowa County*, 116 Or App 96, 103-04, 846 P2d 1350 (1992).

ORS 197.829(2) effectively overrules that aspect of our holding in *Weeks*. However, the statute does not alter the tests that we developed in *Weeks* and *Larson* for determining when a local interpretation *is* adequate for review. We said in *Weeks*:

"We begin by noting our agreement with LUBA that the city council's conclusory statement does not constitute a reviewable interpretation of the local ordinance. In *Larson v. Wallowa County, supra* n 3, we concluded that the county decisionmaker's bare recitation in its order that the proposed use complied with applicable local legislative provisions did not suffice as an interpretation of those provisions and was not adequately articulated or developed to be reviewable by LUBA under the *Clark* standard. We also held that LUBA *could* remand local land use decisions to

require local governments to cure omissions and deficiencies in their interpretation of local legislation. 116 Or App at 103-04." 117 Or App at 453 (emphasis in original).

We went on in *Weeks* to expand on *Larson* and to hold that, under circumstances where a reviewable interpretation was lacking, a remand to the local government was essential. However, we also emphasized in *Weeks* that the test for whether an interpretation is adequate for review is not a formulaic one and is not to be applied rigidly. We noted:

"We expressly reject the suggestion that a local decisionmaker's interpretation must assume any particular form in all cases, as long as it suffices to identify and explain in writing the decisionmaker's understanding of the meaning of the local legislation. Whether findings, conclusions or less structured forms of articulation are adequate to communicate the necessary information will vary from case to case. *See Larson v. Wallowa County*, 116 Or App 96, 840 P2d 1350 (1992)." *Weeks*, 117 Or App at 452-53 n 3.

■ In the present case, respondent agrees that the county's decision does not *expressly* interpret Standard e, in the sense that it sets out a statement of what the standard "means," apart from the statements and findings in the county's order that apply the standard and make comparisons pursuant to it. Respondent contends, however, that the county governing body's interpretation of Standard e can be inferred from the way in which it applied the provision in its decision. We agree.[4] Given the nature of the provision and the nature of the county's order in this case, we do not believe that a separate "express" interpretive statement about the meaning of the comparison requirement was necessary. The county's findings make clear what specific and general types

---

[4] Respondent explains at some length what it understands the substance of the county's implied interpretation of Standard e to be. We do not decide whether *respondent's* understanding is correct in all of its particulars. *But see* note 5. However, the critical point of respondent's argument, which we do find correct and dispositive, is that the *county* itself made *an* interpretation of the provision that can be discerned from its order; therefore, LUBA's resort to an independent interpretation under ORS 197.829(2) was error. *See West v. Clackamas County*, 116 Or App 89, 92, 840 P2d 1354 (1992); *see also Schrock Farms, Inc. v. Linn County*, 142 Or App 1, 4 n 1, 919 P2d 519 (1996).

of properties are being compared with the property in question, and they also make it clear what factors are being considered in making the comparisons. The practical effect of the findings is to give definition to the term "other available property" and to every other term in Standard e that might call for interpretation, in the context of the facts of this case. The county's understanding of what Standard e means is inherent in the way that it applied the standard, and we conclude that its order expresses that understanding in a manner that satisfies the "adequate articulation" test that *Weeks* and *Larson* establish for determining whether a reviewable interpretation has been made.

Petitioners advance a number of arguments in support of their contrary view. Insofar as those arguments focus on the absence of an express interpretation in the county's order, we reject them for the reasons we have already indicated. Petitioners' other arguments are typified by the following passage from their answering brief on the cross-petition:

> "In the face of [Standard e's] explicit requirement for a comparison, some interpretive explanation should have been present in the findings if the county believed to be adequate only a general 'comparison' that failed to analyze [respondent's] property relative to other properties at all. Without that interpretation of the requirements of [Standard e], there was, indeed, nothing for LUBA to defer to."

Although the ostensible target of that and the other arguments that it exemplifies is that the county did not *make* an interpretation that suffices for review, the argument does not in fact bear on that question. Rather, the argument's real target is that the county applied and, implicitly, interpreted Standard e too generally and in a way that was not in keeping with the usual understandings of the term "comparison"; in sum, petitioners' point is that the county's application of the standard was *erroneous*. However, the *Clark* review standard cannot be avoided by labeling what is, in substance, an argument that challenges the correctness of a governing body's interpretation as one that relates instead to whether a reviewable interpretation was made. Because we conclude that the county's decision contains a reviewable interpretation of Standard e, the question before us is not simply

whether petitioners or we might find a different interpretation more persuasive, but whether the interpretation that the governing body made is "clearly wrong" and therefore reversible under *Clark*. We have explained that, to fail that test, the local interpretation must be such "that no person could reasonably interpret the provision in the manner that the local body did." *Huntzicker v. Washington County*, 141 Or App 257, 261, 917 P2d 1051, *rev den* 324 Or 322 (1996). Petitioners do not demonstrate that the interpretation here is reversible.[5] It is unnecessary for us to address the parties' other argument on the merits.

Respondent has moved to strike certain material from petitioners' opening brief. The motion to strike is denied, but we note that the material in question has had no bearing on our decision.

Motion to strike denied; affirmed on petition; on cross-petition, reversed and remanded with instructions to affirm county's decision.

---

[5] For purposes of analysis only, we accept as correct petitioners' characterizations of the county's decision. We note, however, that both LUBA and petitioners appear to have focused more on what respondent *asserts* that the county said than on what we think the county *did* say. In particular, we note that the specific comparisons that the county made between respondent's property and certain *non-UAR properties within the city* receive less attention in the parties' arguments and LUBA's opinion than we think the county itself gave them.