Argued and submitted June 17, on petition and cross-petition, reversed and remanded September 8, 2011

Richard GREEN
and Emily Green,
*Petitioners
Cross-Respondents,*

*v.*

DOUGLAS COUNTY,
*Respondent,*

*and*

Chuck HESTER
and Sandy Hester,
*Respondents
Cross-Petitioners.*

Land Use Board of Appeals
2010106; A148427

263 P3d 355

Bill Kloos argued the cause and filed the response brief for petitioners-cross-respondents. On the opening brief were Nick Klingensmith and Law Office of Bill Kloos, PC.

David J. Hunnicutt argued the cause and filed the brief for respondents-cross-petitioners.

No appearance for respondent Douglas County.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

SERCOMBE, J.

## SERCOMBE, J.

After Douglas County (the county) approved an expanded conditional use permit for respondents' home business, petitioners appealed to the Land Use Board of Appeals (LUBA). Because it determined that the county's decision was inconsistent with ORS 215.448(1), a statute that regulates home businesses in exclusive farm and forest zones, LUBA remanded the case to the county. However, LUBA sustained the county's determination that approval of the proposed development was consistent with Douglas County Land Use and Development Ordinance (LUDO) 1.040.2, a code provision that requires correction of ordinance violations as part of development approval. On review, petitioners contend that LUBA applied the wrong standard when it reviewed the county's application of LUDO 1.040.2. Respondents, who filed a cross-petition for review, assert that LUBA erred in its interpretation of ORS 215.448(1). We conclude that LUBA erred in its review of the county's interpretation of LUDO 1.040.2 and in its own interpretation of the term "building" in ORS 215.448(1). Accordingly, we reverse and remand.

Respondents operate "Romantic River Gardens" on a parcel of land that fronts the Umpqua River in Douglas County. The property is improved with a dwelling, a shop, a gazebo, a 40-foot by 100-foot open-air pavilion, a 12-foot by 22-foot "catering building," and a small building identified as a "bridal cottage" near the existing dwelling. The property is zoned as a statutory exclusive farm use (EFU) zone that permits, as a conditional use, a "[h]ome occupation as a use accessory to an existing dwelling." LUDO 3.4.100(9).

In 2003, respondents were granted a conditional use permit that allowed them to host "weddings and receptions, reunions, and anniversaries" on their property. The permit imposed a number of conditions on the operation of the home business, including that the business would be limited to "one event per weekend" during the period after Memorial Day through the end of September.[1]

---

[1] The permit imposed a total of 10 conditions, some of which pertain to physical changes to the property. Condition 1 required that

LUBA's opinion describes the operation of respondents' business:

"The operational details of the authorized events are not very clear from the record. But for purposes of this appeal there does not appear to be any dispute that [respondents'] participation in the events is largely limited to providing their property with its supporting facilities. The actual production of the events (conducting ceremonies, preparation of food and drinks, playing recorded music and other entertainment and parking management) is provided by caterers and other contractors, not by [respondents] or employees of [respondents]. There also does not appear to be any dispute that at least some of the events will be held in significant part outdoors, weather permitting, in the grassy area behind the house along the river, next to the gazebo and pavilion. For example[,] the record includes photographs showing a large number of folding chairs set up in the grassy area, presumably for a wedding."

In 2010, respondents applied for an amendment to the conditional use permit in order to expand their business. Specifically, they sought to host (1) luncheons, teas, business meetings, memorial services, birthday parties, bridal showers, and other small events and (2) up to two events on weekends and one event during the week, with a maximum of 300 people per week. The Douglas County Planning Commission entered findings and approved the application as requested. After the board of county commissioners denied review, petitioners appealed to LUBA. Respondents intervened in the LUBA proceedings.[2]

Before LUBA, petitioners asserted that the county misconstrued local and state law in issuing the amended conditional use permit. Petitioners argued that the county could not issue the amended permit because of past violations of

"[t]he Home Occupation shall be limited to conducting weddings and receptions, reunions, and anniversaries, and shall conform to the definition and standards for Home Occupations, as specified in Section 1.090 of the Douglas County Land Use and Development Ordinance (LUDO)."

Conditions 7, 8, and 9 related to noise mitigation (installation of a "neighborhood sensitive sound system," preclusion of rented sound systems, and installation of a noise barrier fence).

[2] Douglas County did not appear before LUBA and has not appeared in these review proceedings.

applicable law. Further, according to petitioners, the requested amended conditional use permit would likely violate those same legal standards. Those contentions largely related to the application of ORS 215.448(1), which provides that

> "[t]he governing body of a county or its designate may allow, subject to the approval of the governing body or its designate, the establishment of a home occupation and the parking of vehicles in any zone. However, in an exclusive farm use zone, forest zone or a mixed farm and forest zone that allows residential uses, the following standards apply to the home occupation:

> "(a)   It shall be operated by a resident or employee of a resident of the property on which the business is located;

> "(b)   It shall employ on the site no more than five full-time or part-time persons;

> "(c)   It shall be operated substantially in:

> "(A)   The dwelling; or

> "(B)   Other buildings normally associated with uses permitted in the zone in which the property is located; and

> "(d)   It shall not unreasonably interfere with other uses permitted in the zone in which the property is located."

Petitioners claimed that both the original and the amended conditional use permit were inconsistent with ORS 215.448(1)(c) because the event uses had not been and would not "be operated substantially in" allowed buildings, in that most events occurred outside enclosed buildings. Petitioners also asserted that more than five full-time or part-time persons were used and would continue to be used to staff events, contrary to ORS 215.448(1)(b), and that there were inadequate findings to determine whether noise generated by the events unreasonably interfered with adjacent uses under ORS 215.448(1)(d).

Before the county, petitioners had claimed that, under LUDO 1.040.2, before approving the permit, the county had to consider past violations of LUDO 3.4.100 (the local code equivalent of ORS 215.448(1)) and the conditions of the 2003 conditional use permit. LUDO 1.040.2 provides:

"A development shall be approved by the Director or other Approving Authority according to the provisions of this ordinance. The Director shall not approve a development or use of land that has been previously divided or otherwise developed in violation of this ordinance, regardless of whether the applicant created the violation, unless the violation can be rectified as part of a development proposal."

The county concluded that the proceeding before it was "not a proceeding to determine whether the current operation complies with the 10 approval conditions. That would be the proper subject of an enforcement action."[3]

Before LUBA, petitioners contended that the county erred in its application of LUDO 1.040.2. LUBA disagreed and held:

"We understand the planning commission to have interpreted LUDO 1.040.2 to require more than petitioners' allegations and presentation of evidence that [respondents'] current event-site home occupation may violate the LUDO or the 2003 CUP. We understand the planning commission to have implicitly interpreted LUDO 1.040.2 to require a completed enforcement action that concludes that [respondents'] event-site home occupation is in violation of the LUDO or 2003 CUP. While the planning commission's interpretation is not entitled to any deference under ORS 197.829(1), we cannot say that interpretation is erroneous. ORS 197.835(9)(a)(D)."

(Footnote omitted.)

On the other hand, LUBA concluded that the county did err in its application of ORS 215.448(1) to the proposed conditional use permit amendment. LUBA determined that (1) "in requiring that the home occupation operation be conducted substantially 'in' a dwelling or building, the legislature had in mind and intended that qualifying structures be enclosed, in order to reduce the size, impacts and externalities of home occupations" so that activities within the gazebo and pavilion would not qualify as being conducted "in" a

---

[3] Although LUDO 1.040.2 refers to "the Director," the parties assume, as do we, that it also regulates determinations by the planning commission when a decision has been referred to the commission by the director of the planning department under LUDO 2.100.3.

"building"; (2) even if activities under the roofs of the pavilion and gazebo were in buildings, the expanded home occupation might not be conducted substantially in the dwelling and associated buildings, at least without any limiting conditions, because the operations would not be conducted "largely" or "mainly" in the dwelling or buildings; and (3) the home occupation business " 'employs' the persons who are required to produce events on the site, within the meaning of ORS 215.448(1)(b), whether they are [respondents'] employees or independent contractors or whether they are the employees or independent contractors of the attendees of the events" so that the amended conditional use permit would need to be conditioned to avoid that statutory violation.[4]

On review, petitioners assign error to LUBA's adoption of the county's "implicit" interpretation that LUDO 1.040.2 applies only to implementation of completed enforcement proceedings. Petitioners contend that LUBA's reasoning was incorrect because (1) the county was obliged to, but in fact did not, interpret the code provision at issue; (2) if the provision was interpreted by the county, no deference should be given to the county's interpretation because it was not plausible; and (3) the interpretation was, in any event, inconsistent with the text and context of the provision. Respondents, for their part, suggest that the county did interpret LUDO 1.040.2 in stating its understanding of the provision's effect on the pending land use application and that the interpretation was plausible and entitled to deference under ORS 197.829(1).

We review LUBA's order to determine whether it is "unlawful in substance." ORS 197.850(9)(a). In addressing whether LUBA properly analyzed the county's interpretation of LUDO 1.040.2, we first determine the board's standard of review. Pursuant to ORS 197.829(1), LUBA must affirm a local government's interpretation of its land use regulations,

"unless the board determines that the local government's interpretation:

---

[4] LUBA also concluded that the county findings were adequate to explain why the county believed that the noise impacts did not violate ORS 215.448(1)(d) or the local code equivalent, and that the evidentiary record supported those findings. Those determinations are not challenged on review.

"(a)   Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b)   Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c)   Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d)   Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

Thus, the statute requires LUBA (as well as a reviewing court) to defer to a local government's interpretation of its land use regulations that is "plausible, and is not inconsistent with the 'express language' of the provisions at issue or the purposes or policies underpinning them." *Siporen v. City of Medford*, 349 Or 247, 266, 243 P3d 776 (2010). "A LUBA decision is 'unlawful in substance' * * * if, in contravention of the standard of review set out at ORS 197.829(1), LUBA substitutes its own interpretation of a local government's land use regulations for a plausible interpretation of those regulations offered by the local government." *Id.* at 261. The rationale for that rule of deference was explained in *Siporen*:

"[W]e note that ORS 197.829(1) is, in large part, a codification of this court's holding in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). As *Clark* implied, 313 Or App at 515 (citing and describing *Anderson v. Peden*, 284 Or 313, 587 P2d 59 (1978)), and as this court's decision in *Gage v. City of Portland*, 319 Or 308, 316-17, 877 P2d 1187 (1994), later spelled out, at least one of the fundamental ideas behind applying that standard is that, when a governing body is responsible for enacting an ordinance, it may be assumed to have a better understanding than LUBA or the courts of its intended meaning."

349 Or at 257-58 (footnote omitted). In light of the standard described in *Siporen*, deference is owed under ORS 197.829(1) when (1) a governing body of a local government; (2) makes an "interpretation" of its own land use policies; (3) that is plausible and not inconsistent with the standards set out in the statute.

Here, the parties agree—as do we—that the decision at issue was made by the local governing body.[5] We turn, then, to whether the county made a reviewable interpretation of LUDO 1.040.2. Petitioners contend that the county's decision does not contain an interpretation that is adequate for review. Respondents, on the other hand, contend that, in its decision, the county adequately interpreted the ordinance and that interpretation "can be understood from reading its decision."

Whether a pronouncement suffices as an interpretation that is adequate for review will depend upon the case. We observed in *Alliance for Responsible Land Use v. Deschutes Cty.*, 149 Or App 259, 266, 942 P2d 836 (1997), *rev dismissed as improvidently allowed*, 327 Or 555 (1998), that "the test for whether an interpretation is adequate for review is not a formulaic one and is not to be applied rigidly." However, to be sufficient, an interpretation must suffice " 'to identify and explain in writing the decisionmaker's understanding of the meaning of the local legislation.' " *Id.* (quoting *Weeks v. City of Tillamook*, 117 Or App 449, 452-53 n 3, 844 P2d 914 (1992)).[6] Tested by that measure, the county determination did not interpret LUDO 1.040.2 in a manner sufficient for review.

---

[5] The Douglas County Board of Commissioners, the appropriate governing body in this case, affirmed the decision of the planning commission and explained its reasons to decline review—concluding, in effect, that the commission's decision was correct—and ratified the commission's decision by incorporating that decision "as the Board's final decision."

[6] We note that ORS 215.416, which regulates the issuance of county land use permits, also imposes an obligation on the county to explain its decisions. Pursuant to ORS 215.416(9),

"[a]pproval or denial of a permit or expedited land division shall be based upon and accompanied by a brief statement that explains the criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

A sufficient explanation pursuant to that statutory standard must identify the applicable standards and criteria (those "considered relevant to the decision") and "explain" their relevance if that association is not plain or obvious in the application. Conversely, when a proposed standard or criterion is determined to be immaterial, to satisfy the requirement of the statute, a local government must explain that disassociation unless it is plain or obvious in the application. *See Gould v. Deschutes County*, 216 Or App 150, 159, 171 P3d 1017 (2007) (county master plan approval findings held insufficient under ORS 215.416(9) because of a lack of a sufficient description of the plan and justification based on applicable approval standards).

The county's decision contains no explicit interpretation of LUDO 1.040.2. The bare conclusion that the ordinance provision was immaterial ("[t]his is not a proceeding to determine" how LUDO 1.040.2 applies to violations of approval conditions) speaks to the scope of the provision, but not to its meaning. The county finding does not discuss the text or substance of LUDO 1.040.2. Just as significantly, the county decision, after finding that violation of any operational condition was immaterial under LUDO 1.040.2, then provides that "[s]ubstantial evidence in the record shows the current operation complies with the 10 approval criteria imposed in 2003" and makes factual findings on compliance with those conditions. Those findings seemingly backtrack from any determination that LUDO 1.040.2 is immaterial to an approval of the permit.

Nor can the county observation about the conditions reasonably be viewed as an "implicit" interpretation of LUDO 1.040.2. An implicit interpretation of an ordinance provision that is eligible for ORS 197.829(1) deference is one where "[t]he practical effect of the findings is to give definition to the term" and where the "county's understanding of [the term] is inherent in the way that it applied the standard." *Alliance for Responsible Land Use*, 149 Or App at 267. That is, a local government's implicit interpretation of an ordinance must carry with it only one possible meaning of the ordinance provision and an easily inferred explanation of that meaning.

The county's application of LUDO 1.040.2 has neither of those qualities. Again, the provision precludes "development or use of land that has been previously divided or otherwise developed in violation of this ordinance * * * unless the violation can be rectified as part of a development proposal." There are a number of ways that the provision could apply or not apply to the conditional use permit conditions. It could only limit, as LUBA inferred, development or use when there has been a past adjudicated violation of land use or land division ordinances that cannot be remedied by the development proposal.

On the other hand, "previously divided or otherwise developed" could mean the physical status of the property as

finally divided or developed so that the provision only requires correction of any unlawful physical conditions at the time of the development request. LUDO 1.090 defines "development" in this sense, as "[a]ny man-made change to improved or unimproved real estate[.]"[7] Alternatively, as suggested by petitioners, the term "previously divided or otherwise developed" could include unlawful actions taken to divide, develop, or use the property as part of its development even if the ultimate physical status of the property is lawful.

Thus, a past violation of the operational conditions of the conditional use permit here could be immaterial under LUDO 1.040.2 for different reasons, depending upon the meaning of the provision (*i.e.*, whether the ordinance provision only regulates divisions of and physical changes to land, whether it supplements or depends upon other enforcement remedies, or whether it only affects violations that can be "rectified" or cured). The county's reason for arriving at any of those interpretations is not apparent. Nor is that reason inherent in the result reached. Thus, we conclude that the county did not interpret LUDO 1.040.2 as part of its decision, and that LUBA's opinion and order was "unlawful in substance" under ORS 197.850(9)(a) in concluding that it did so.

Lacking an adequate interpretation to which deference could be owed, ORS 197.829(2) provides that "[LUBA] may make its own determination of whether the local government decision is correct." As we noted in *Alliance for Responsible Land Use*:

"If the county decision does contain a reviewable interpretation of the local provision, LUBA's and our review would be subject to the deferential standard of *Clark* and ORS 197.829(1)(a)-(c). However, if a local decision does not contain an interpretation of an applicable local provision, or no interpretation that suffices for review, then ORS 197.829(2) becomes applicable. It provides:

_____

[7] Relatedly, LUDO 3.52.025 also regulates the physical condition of land at the time of a permitting action and provides that "[n]o permit shall be issued by the Building Official or any government agency for the construction, erection, location, maintenance, repair, alteration or enlargement, or the change of use of a structure or property that does not conform to the requirements of this ordinance."

" 'If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such interpretation is inadequate for review, [LUBA] may make its own determination of whether the local decision is correct.'

"We have interpreted the statute to mean that, when a local governing body's land use decision lacks an essential interpretation of applicable local legislation—or lacks an interpretation that is adequate for review—LUBA and, in turn, this court, may interpret the legislation *ab initio* and independently, as part of the process of reviewing the local government's decision. * * * In such circumstances, the deferential standard of *Clark* and of ORS 197.829(1) is, of course, inapplicable, because there is no local interpretation to which deference can be accorded."

149 Or App at 264-65. However, as we stated in *Opp v. City of Portland*, 153 Or App 10, 14, 955 P2d 768, *rev den*, 327 Or 620 (1998):

"The statute itself says that LUBA *may* make an independent determination concerning the correctness of the local decision in circumstances where the local government has failed to interpret local legislation—at all or adequately for review—that is pertinent to the decision. The statute makes the reviewing body's exercise of the interpretive authority permissive rather than mandatory. It thereby gives LUBA and the appellate courts the alternative of remanding the decision to the local government to provide any essential interpretation that the decision omits."

(Emphasis in original.)

Here, we conclude that the proceeding should be remanded to the county for an interpretation and potential application of LUDO 1.040.2. As in *Opp*, the county "is in a far better position than LUBA or we to interpret the ordinance provision and, then, to make the largely factual and largely interdependent determination of whether the provision as it interprets it applies to" respondents. *Id.* at 15. The meaning of LUDO 1.040.2 is far from obvious and could be clarified through interpretation of contextually related ordinance provisions and the legislative history of the code section and its application in other settings, insights that the county is better able to provide. Moreover, for reasons

explained below, the proceeding must be remanded to the county for further action in any event, and no finality could be gained through an interpretation of LUDO 1.040.2 by LUBA or us.[8]

This brings us to the cross-petition for review. Respondents claim that LUBA erred in concluding that (1) activities within the gazebo and pavilion would not qualify as "in * * * buildings" under ORS 215.448(1)(c); (2) the requested permit would need to be conditioned to assure that the home occupation activities occur "largely" or "mainly" in the dwelling and any buildings in order to be "substantially in" those structures under that statutory subsection; and (3) in order to comply with the requirement that the home occupation "employ on the site no more than five full-time or part-time persons," ORS 215.448(1)(b), a necessary condition of approval is that the home occupation business use five or fewer persons to produce events on the site, without regard to whether those persons are employed by the property resident or someone else. For the reasons set forth in LUBA's opinion, *Green v. Douglas County*, 63 Or LUBA 200, 216-25 (2011), we agree with its conclusions on the meaning of "substantially" and "employ" under ORS 215.448(1).

We part company with LUBA, however, with regard to its conclusion that the legislature intended the term "building" in ORS 215.448(1)(c) to mean "that qualifying structures be enclosed, in order to reduce the size, impacts and externalities of home occupations." LUBA looked to the plain meaning of the term, and cited the definition of "building" in *Webster's Third New Int'l Dictionary* 292 (unabridged ed 1981):

" '[A] constructed edifice designed to stand more or less permanently, covering a space of land, usu[ally] covered by a roof and more or less completely enclosed by walls, and

---

[8] The parties do not discuss, and we do not decide, the applicability of ORS 197.835(11)(b). That statute requires LUBA to affirm a land use decision, notwithstanding insufficient findings, if "the parties identify relevant evidence in the record which clearly supports the decision."

serving as a dwelling, storehouse, factory, shelter for animals, or other useful structures—distinguished from structures not designed for occupancy (as fences or monuments) * * *.' "

LUBA reasoned that ORS 215.448(1)(c) required that a home occupation be operated substantially "in" a dwelling and other buildings, and "in" meant location in a " 'materially bounded object.' " (Quoting the definition of "in" at *Webster's* at 1139.) Thus, according to LUBA, the legislature intended that, to be a building within the meaning of ORS 215.448, a structure in question would need to be " 'more or less completely enclosed by walls.' " LUBA concluded that this meaning of "building" was consistent with the purpose of ORS 215.448 to "reduce the size, impacts and externalities of home occupations." In light of those conclusions, LUBA held that approval of the requested home occupation permit would need to be conditioned to assure that it operated substantially in enclosed buildings.

Board Member Holstun concurred with the board majority that, because the amended conditional use permit allowed activities "substantially" outside the "dwelling" and any "buildings" as well as the on-site employment of more than five persons, the permit authorized a use that is inconsistent with ORS 215.448. He disagreed, however, with the majority's conclusion that the gazebo and pavilion were not "buildings" under the statute. Holstun noted that ORS 215.448(1)(d) directly requires that the home occupation not interfere with other land uses, so there is no reason to read into ORS 215.448(1)(c) any implicit intent that "building" should be interpreted in a way to minimize off-site effects. Instead, in his view, the more likely legislative intent was "to ensure that buildings other than those 'normally associated with uses permitted in the zone' would not be constructed to house home occupations." (Footnote omitted.) He concluded:

"Rather than speculate that ORS 215.448(1)(c) must have been adopted to address concerns about noise or other externalities, I believe it is more appropriate to view that legislative word choice in context. Again, ORS 215.448(1)(c) requires that a home occupation be operated in a 'dwelling' or in 'buildings normally associated with uses permitted in the zone.' [Respondents'] property is zoned FC. The FC zone

is a statutory EFU zone and permits, among other things, 'farm uses' and 'buildings and accessory uses customarily provided in conjunction with farm use.' LUDO 3.4.050(1) and (3). Structurally, the pavilion closely resembles a pole barn. Pole barns and other farm buildings are frequently open sided. I think the legislature was well aware that agricultural buildings commonly are not fully enclosed by walls. If the legislature wanted home occupations to be limited to agricultural buildings that are fully enclosed by walls it would have said so. I see no basis for writing in a requirement that the 'buildings' referenced in ORS 215.448(1)(c) must be fully enclosed by walls. Doing so, I believe, runs afoul of ORS 174.010 by inserting a limitation that is not fairly inferred from the text and, I believe, is inconsistent with the context."

(Footnote omitted.)

On review, respondents embrace this logic without significant embellishment. Petitioners, for their part, assert that the reasoning of the board majority on the meaning of "building" is more cogent. We conclude that the concurring opinion is the better analysis.

The method by which we discern the legislature's intended meaning of a statute is familiar. We glean that intent from the text, context, and legislative history of the statute, resorting, if necessary, to maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The common meaning of "building," suggested by the *Webster's* definition cited by LUBA, is a permanent edifice that usually has a roof and walls and that is designed for occupancy. That is to say, it is not essential to the categorization of a structure as a building that it be bounded by walls.

But that meaning of "building" for purposes of ORS 215.448(1) is only the beginning of the analysis. A more particular meaning of a statutory term can result from an examination of its context. *See Dept. of Transportation v. Stallcup*, 341 Or 93, 99-100, 138 P3d 9 (2006) (rejecting reliance on a dictionary definition of a statutory term in favor of a meaning suggested by the statute's context). LUBA found that the relevant context of ORS 215.448(1)(c) was another subsection of

the statute—ORS 215.448(1)(d), providing that a home occupation "shall not unreasonably interfere with other uses permitted in the zone in which the property is located." LUBA inferred that the effect of that subsection, *i.e.*, limiting the external effects of a home occupation use, was the intended effect of ORS 215.448(1)(c). Thus, according to LUBA, "building" means a structure designed to mask the external effects of a home occupation use, *i.e.*, one that is enclosed by walls.

The problem with that reasoning is that it is not necessarily true that the legislature intends that each component of a statutory definition advance the same objective. There may be a number of reasons to narrow the definition of a statutory term. In this case, for example, "home occupation" is defined by characteristics that go to the affiliation of the enterprise (operated by the property resident or resident's agent), the size of the operation (limitation on the number of employees), and its external effects (proscription on unreasonable interference with other uses). Each component of the home occupation definition arguably advances a particular objective (promotion of work at home, encouragement of small operations in order to lessen any demand on public facilities and services, prevention of interference with resource land uses). There is no basis to conclude that the objective intended from the limitation to dwellings and associated buildings is the same or different than the objective intended by any other part of the definition, including ORS 215.448(1)(d). Confinement of operations to a dwelling advances the work-at-home and size objectives; confinement of operations to associated buildings could be to limit the size of the business or to reduce its external effects, or neither or both. Any legislative intent to narrow the meaning of "building" is not apparent from the relation of ORS 215.448(1)(c) to the other factors in the definition.

Nor is that intent suggested by any other contextual analysis, legislative history, or rule of construction advanced by the parties. We conclude that the LUBA concurrence got it right. The meaning of "building" under ORS 215.448(1)(c) is not confined to only walled structures.

Instead, the limiting factor for the allowed types of buildings under ORS 215.448(1)(c)(B) is expressly stated.

That limitation is not a matter of the design of the structure; it is whether the building is commonplace—whether it is "normally associated with uses permitted in the zone in which the property is located." If gazebos and pavilions are normally associated with farm dwellings or other agricultural uses permitted by the applicable zoning district, then they are the type of buildings for housing a home occupation under ORS 215.448(1)(c). LUBA erred in concluding that ORS 215.448(1)(c)(B) imposes an additional limitation on the types of buildings that can be used by a home occupation business.

On petition and cross-petition, reversed and remanded.