Argued and submitted December 4, 1998, affirmed January 6, petition for review denied May 25, 1999 (328 Or 594)

# ROGUE VALLEY ASSOCIATION OF REALTORS,
*Petitioner,*

*v.*

# CITY OF ASHLAND,
*Respondent.*

# (LUBA No. 97-260; CA A103845)

970 P2d 685

David J. Hunnicutt argued the cause and filed the brief for petitioner.

Paul Nolte argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioner seeks review of LUBA's decision remanding the City of Ashland's zoning ordinance amendments from which petitioner appealed, but rejecting several of the specific arguments advanced by petitioner. We affirm.

The amendments were enacted through the Hillside Development Ordinance (HDO), and they have the general effect of increasing the restrictiveness of the city's regulation of residential development on hillside and sloped areas. Among the arguments that petitioner made to LUBA was that various provisions of the HDO lack the "clear and objective" standards that ORS 197.307 requires. LUBA agreed with some of petitioner's contentions to that effect and disagreed with others. LUBA's rulings that were not favorable to petitioner on those arguments are the focus of the second and third assignments of error that petitioner makes to us.[1]

ORS 197.307 provides, as relevant:

"[3](b)   A local government shall attach only clear and objective approval standards or special conditions, as provided in subsection (6) of this section, regulating appearance or aesthetics to an application for development of needed housing or to a permit, as defined in ORS 215.402 or 227.160, for residential development. The standards or conditions shall not be attached in a manner that will deny the application or reduce the proposed housing density provided the proposed density is otherwise allowed in the zone.

"* * * * *

"(6)   Any approval standards, special conditions and the procedures for approval adopted by a local government shall be clear and objective and shall not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay."

■       In its second assignment, petitioner contends that LUBA erred by holding that four sections of the HDO are sufficiently "clear and objective" to satisfy ORS 197.307(6). Each of the sections contains requirements relating to the contents

---

[1] Petitioner makes two other assignments, both of which we reject without discussion.

of applications for residential development permits. None contains substantive approval criteria. LUBA assumed that the sections were subject to ORS 197.307(6), nonetheless, as provisions that govern "procedures for approval." It concluded that, insofar as the requirements of the sections themselves may fall short of being "clear and objective," any resulting problems can be rectified through the notices that ORS 227.178(2) requires the city to provide applicants for permits.[2] Consequently, LUBA held that the HDO provisions do not facially offend ORS 197.307(6).

■     Petitioner's challenge in this case is a facial one to a legislative enactment. To succeed in that challenge, petitioner must demonstrate that the provisions are *categorically incapable* of being clearly and objectively applied under any circumstances where they may be applicable. *See Benson v. City of Portland*, 119 Or App 406, 410, 850 P2d 416, *rev den* 318 Or 24 (1993). Petitioner does not make that demonstration. Moreover, given the fact that the provisions in question here are all concerned with the contents of applications—as distinct from procedures that affect later stages of the process or approval standards that affect the ultimate disposition of applications—we agree with LUBA that the notices for which ORS 227.178(2) provides *can* play a role in supplying any clarity that the city's provisions themselves may lack.

Petitioner asserts that ORS 197.307(6) requires that the procedures *in the local provisions* must be clear and objective and that the notice required by a separate statute cannot serve as a substitute if the requisite clarity cannot be found in the local provisions themselves. However, because these local provisions relate to the contents of applications, we see no reason why the notice that ORS 227.178(2) requires cannot serve the informative function for which it is specifically

---

[2] ORS 227.178(2) provides, in material part:

"If an application for a permit, limited land use decision or zone change is incomplete, the governing body or its designee shall notify the applicant of exactly what information is missing within 30 days of receipt of the application and allow the applicant to submit the missing information."

The city does not appear to question LUBA's conclusion or petitioner's assumption that the sections, in themselves, *can* be viewed as lacking clarity or objectivity. Consequently, we will not do so either, for purposes of our review here. We note, however, that the statute requires the provisions to be "clear and objective"; it does not require simplicity.

intended, simply because the local provisions are also subject to ORS 197.307(6).[3] We conclude that petitioner does not show that the city provisions *cannot* be clearly and objectively applied. Therefore, its second assignment of error fails.

■      In its third assignment, petitioner asserts that LUBA erred insofar as it rejected petitioner's contentions that the HDO provisions that it challenges violate the "clear and objective" requirement of ORS 197.307(3)(b), as distinct from ORS 197.307(6). LUBA's *holding* on the *specific* arguments that petitioner makes in this connection was to encompass them in its remand, to provide the city with "an opportunity to explain whether its HDO provisions regulate for purposes other than appearance or aesthetics." In so doing, however, LUBA made the following general interpretation of ORS 197.307(3)(b):

> "ORS 197.307(3) only regulates standards or special conditions applied to needed housing or residential development generally, *if* the standards or special conditions regulate *only* for appearances or aesthetic purposes. In other words, if there are other planning purposes for such residential regulations, the fact that the regulations may *also* regulate for appearance or aesthetic purposes does not make ORS 197.307(3) applicable." (Emphasis in original.)

Petitioner disagrees with that interpretation and maintains that LUBA effectively inserted the word "only" before the words "appearance or aesthetics" in the statute, in violation of ORS 174.010. According to petitioner, ORS 197.307(3)(b) applies to standards and conditions that have *any* effect on appearance or aesthetics, even if the provisions also have other regulatory objectives. The city responds that LUBA did not insert the word "only" or anything else into the statute; rather, it correctly read the statute as applying to regulations of the one thing it does mention—appearance or aesthetics—and not to other things. Stated another way, the city's position is that LUBA was not incorrect in reading the statute as implicitly containing the word "only," because it is

---

[3] Whether or not particular applicants in particular cases are *in fact* afforded the clear and objective approval procedures that the latter statute requires, with or without the aid of the notice prescribed by OR 227.178(2), is a question that must abide those cases.

not necessary for a statute to state that word expressly if it deals by its terms with only one thing.

We agree with LUBA and the city. ORS 197.307(6) requires clear and objective standards and conditions in connection with *all* regulations affecting the development of needed housing; subsection (3)(b) applies by its terms only to standards and conditions "regulating appearance or aesthetics" in connection with the development of needed housing *or* residential development generally.[4] The only way to give full effect to both subsections is to read the "clear and objective" requirement of ORS 197.307(3)(b) as applying *exclusively* to provisions or the parts of them that regulate the appearance and aesthetic effects of residential development of other kinds, while ORS 197.307(6) imposes the "clear and objective" requirement on *all* standards and conditions as they affect needed housing. Petitioner's argument essentially disregards the limited scope of subsection (3)(b) and would substantially eviscerate subsection (6). As petitioner reads subsection (3)(b), a standard or condition that applies to residential development only of kinds other than needed housing and that is principally concerned with matters other than appearance or aesthetics would be subject to the "clear and objective" requirement if it has *any incidental* effect on appearance or aesthetics. That reading is contrary to subsection (6), and it goes beyond what subsection (3)(b) purports to require. We conclude, as did LUBA, that ORS 197.307(3)(b) does not apply to regulations that deal with matters other than appearance or aesthetics, whether or not those regulations happen to have a secondary effect on appearance or aesthetics in addition to affecting their other regulatory target.[5]

Affirmed.

---

[4] It suffices for this discussion to note that "needed housing," as defined by ORS 197.303(1), consists of specific kinds of residential uses for which there is a legislatively recognized special need.

[5] We recognize that there *can* be a tail-wagging-the-dog problem of the opposite kind, *e.g.*, where regulations that are almost wholly aimed at appearance or aesthetics have some incidental effect on other matters. If confronted with arguments that regulations of that kind are beyond the scope of ORS 197.307(3)(b), we anticipate that LUBA and we will be able to "tell it when we see it." The best way to avoid close questions is for local governments to write their regulations in a manner that keeps separate matters separate, but we are aware that some regulations will necessarily and inevitably have overlapping effects, regardless of how they are drafted.