Argued and submitted August 18, affirmed November 9, 2011

Richard SIEGERT,
*Petitioner below,*
*and*

Linda SIEGERT,
*Petitioner,*

*v.*

CROOK COUNTY,
*Respondent.*

Land Use Board of Appeals
2010110; A148909

266 P3d 170

William A. Van Vactor argued the cause for petitioner. With him on the brief was Miller Nash LLP.

Eric Blaine, Assistant County Counsel, argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

The Crook County Court approved the location of a dog breeding kennel in a zone where, under the current zoning code, such kennels are not permitted. The county reasoned that, when the current zoning code was enacted in 1977, the kennel was already in existence and lawful under the then-current code (1973), and such preexisting lawful uses could be subsequently "verified." See ORS 215.130(5). Petitioner Linda Siegert appealed the county's decision to the Land Use Board of Appeals (LUBA). LUBA affirmed the county, and petitioner now seeks judicial review, arguing that the county's interpretation of the 1973 code is implausible; under that code as well as the current code, she contends, the kennel was not a permitted use. Further, petitioner argues that the county violated its own procedures by considering certain testimony that was admitted after the hearing record closed. We affirm.

The property subject to this dispute is a 59.25-acre parcel that includes grazing land, crops, and a dog breeding kennel. In February 2010, the property's owner[1] filed an application to verify the kennel as a nonconforming use. The parties agree that, under the current zoning code, the kennel is not a permitted use. They also agree that, if the kennel complied with the applicable zoning code in effect at the time that the kennel operation began in 1977—that is, the 1973 code—then the use may continue under ORS 215.130(5): "The lawful use of any building, structure or land at the time of the enactment or amendment of any zoning ordinance or regulation may be continued." They disagree, however, on whether the 1973 code would have permitted the breeding kennel in its current location. The county planning department determined that, under the 1973 code, a dog breeding kennel was lawful, and verified the use (subject to conditions that are not relevant to this review). Petitioner appealed to LUBA, and LUBA affirmed. Thus, the issue before this court, subject to the standard of review described below, involves interpretation of the 1973 Crook County Zoning Code (CCC).[2]

---

[1] The owner did not appear before LUBA or participate in this judicial review.

[2] References to the Crook County Zoning Code are to the 1973 version throughout.

In reaching the conclusion that the dog kennel was a lawful use under the 1973 code, the county reasoned as follows: In 1977, although the property's zone did not expressly permit kennels either outright or conditionally, one section—CCC 3.170, which listed the uses permitted in the property's zone—allowed "farming" as an outright use. Further, CCC 1.060 expressly exempted from all zoning restrictions certain agricultural and farm uses, including "animal husbandry."

"Agriculture, grazing, horticulture and commercial uses shall be exempt from the provisions of this ordinance, also farm dwellings and other farm buildings. * * * Other farm uses included in this section are beekeeping, dairying, swine raising, ranching of furbearing animals, animal husbandry, and similar farm operations in the primary preparation and storage of farm products grown on the premises."

The county determined that, at the time the property owner's kennel was established in 1977, a dog breeding kennel fell within the definition of "animal husbandry" and was therefore exempt from zoning restrictions. In so concluding, the county cited this court's opinion in *Linn County v. Hickey*, 98 Or App 100, 102, 778 P2d 509 (1989), in which we interpreted a pre-1985 version of the exclusive farm use zone statute, ORS 215.203, to permit a dog breeding kennel operation as "animal husbandry." The county cited, in addition to *Hickey*, the fact that the property had (and continues to have) farm status for purposes of property tax; the fact that the county previously treated a dog breeding kennel as "animal husbandry" on a 1976 "Zoning Clearance Request Form"; and the "testimony" of Crook County Commissioner Weberg, who had been a commissioner since 1971, and who had "personal knowledge of the purpose and intent of the 1973 zoning ordinance."

The county rejected petitioner's interpretation of the 1973 code. That interpretation, as noted, relied on CCC 3.170, which described the uses permitted in the property's zone but did *not* list breeding kennels as either a permitted or conditional use, thereby implying that kennels were not permitted. Petitioner pointed out, further, that, at the relevant time, kennels (including breeding kennels) *were* specifically listed as a permitted or conditional use in six other zones, leading to the further inference that, if the county had

intended to permit kennels in the property's residential zone, the zone would have listed that use as a permitted or conditional use. Also, petitioner pointed out that in 1973, the code provision for the general agricultural zone (AG-2) separately permitted "farm uses" and "kennels," thereby leading to the inference that the two uses are separate, *i.e.*, that a kennel is not a farm use; had a kennel been farm use, there would have been no need to separately name it. Thus, petitioner argued, a farm use, including "animal husbandry," was not intended to encompass kennels. Petitioner contended that, pursuant to another code provision (CCC 10.10[3]) that required the county to give effect to the more restrictive provision when two provisions appeared to conflict, the county had to give effect to CCC 3.170 (listing permitted uses) over CCC 1.060 (exempting animal husbandry).

Petitioner appealed the county's decision to LUBA. LUBA began by describing its standard of review, beginning with ORS 197.829:

"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

LUBA explained that, pursuant to ORS 197.829(1) and the Supreme Court's opinion in *Siporen v. City of Medford*, 349 Or 247, 259, 243 P3d 776 (2010), LUBA was required to

---

[3] CCC 10.10 provided, in part:

"Where the conditions imposed by a provision of this ordinance are less restrictive than comparable conditions imposed by any other provisions which are more restrictive, the more restrictive shall govern."

affirm the county's interpretation of its own code unless the county's interpretation was inconsistent with all of the express language of CCC 1.060 or the purpose or underlying policy on which the 1973 code was based.

Under that deferential standard, LUBA concluded that the county's interpretation should be affirmed, explaining:

"Whether petitioners' contrary interpretation of CCC 1973 1.060 is better or more consistent with the language, purpose and policy of CCC 1973 is not the relevant question. The relevant question to be addressed is whether the county's interpretation of all of the relevant provisions of CCC 1973 is plausible. *Siporen*, 349 Or at 259. We agree with [the county] that the county's interpretation of the relevant provisions of CCC 1973 is not inconsistent with the express language, purpose and policy underlying the provisions being interpreted. Given the county's explanation of its interpretation of CCC 1973 1.060 embodied in the decision, we conclude that the county's interpretation of the relevant provisions of CCC 1973 is not inconsistent with the express language of the ordinance. ORS 197.829(1)(a). As explained above, the county rejected petitioner's argument that CCC 1973 3.170 required the county to deny the non-conforming use, and concluded that the breeding kennel operation was 'animal husbandry,' a 'farm use' under CCC 1973 1.060 that was exempted from the provisions of CCC 1973 3.170. The county relied on the express language of CCC 1973 1.060 and the Court of Appeals' interpretation of the term 'animal husbandry' in the EFU zone as including a breeding kennel operation."

LUBA concluded that the county's interpretation of the relevant provisions of the code was not inconsistent with the express language of CCC 1.060 or other provisions of the code, or with its purpose or underlying policy.

LUBA further explained that, although petitioner was correct that the county could not properly rely on a planning commissioner's statements as legislative history in support of its interpretation of CCC 1.060, any such reliance was harmless.

On judicial review, the parties acknowledge that our standard of review of the county's interpretation of the zoning ordinance is, like LUBA's standard, described in *Siporen*, 349 Or at 259: whether the county's interpretation is "plausible." In *Siporen*, the Supreme Court explained that, when a local government plausibly interprets its own land use regulations "by considering and then choosing between or harmonizing conflicting provisions, that interpretation must be affirmed, * * * unless it is inconsistent with '*all* of the express language that is relevant to the interpretation, or inconsistent with the purpose or policies underpinning the regulations.' " *Id.* (emphasis in original; citations omitted).

The court described its role in determining whether the local government's interpretation is plausible:

> "[T]his court (like the Court of Appeals) must determine *for itself* whether the interpretation underpinning the local government's decision is 'inconsistent with the express language' of the provision or provisions at issue. To the extent that the interpretation is directed at a single term or statement, that means determining whether the interpretation plausibly accounts for the text and context of the term or statement. But, to the extent that the interpretation is directed at multiple statements that may be in conflict, the inconsistency determination is a function of two inquiries: (1) whether the interpretation in fact is an interpretation, *i.e.*, a considered determination of what was intended that plausibly harmonizes the conflicting provisions or identifies which ones are to be given full effect; and (2) the extent to which the interpretation comports with the 'express language' of the relevant provisions (including, necessarily, those provisions that, according to the interpretation at issue, are to be given full effect)."

349 Or at 262 (emphasis in original).

Thus, on judicial review, this court's function is to determine whether the county's interpretation is a plausible one that is consistent with at least some of the express language of the relevant code provisions. If the code provisions permit conflicting interpretations, we must affirm the local government's interpretation if (1) the local government in fact engaged in a "considered determination" that either

(a) plausibly harmonizes conflicting provisions *or* (b) identifies which provisions are to be given full effect; and (2) the local government's interpretation comports with at least some of the express language of the relevant provisions. *Id.* at 259.

Petitioner appears to accept, as she must, that the county's 27-page, single-spaced opinion demonstrates that the county engaged in serious consideration. It is also undeniable that the county identified which provision was to be given effect: the provision allowing animal husbandry. Petitioner, however, contends in her first assignment of error that the county's interpretation of the relevant CCC provisions to conclude that a dog breeding kennel is "animal husbandry," and therefore a permitted farm use, is not plausible. In support of her argument, she renews the arguments that she made before the county and LUBA: (1) CCC 3.170 described the uses permitted in the RR(M)-2 zone (of which the property was a part) but did not expressly permit kennels; (2) kennels were expressly permitted in six other zones; (3) in describing the uses allowed in an agricultural zone, the drafters of the 1973 code separately permitted "kennels" and "farm uses," thereby suggesting that a kennel use is not a farm use; and (4) CCC 10.10 requires us to give effect to CCC 3.170 and not CCC 1.060 because the former is more restrictive than the latter. Petitioner also contends that LUBA failed to properly apply well-settled rules of statutory construction because it used extrinsic sources (*Linn County*, and the dictionary) to interpret an ambiguous term ("animal husbandry") instead of relying on the plain meaning of an express term ("kennel"). According to petitioner, when the code provisions are considered together, the only plausible interpretation is that kennels were not intended to be a permitted use in the RR(M)-2 zone.

Like LUBA, we conclude that, although petitioner's arguments may point to a better or more plausible interpretation of the Crook County Zoning Code than the county's own interpretation, the county's interpretation of CCC 1.060—"animal husbandry" includes dog breeding kennels—remains plausible and is therefore entitled to deference. At the relevant time, the code did not define animal husbandry, but the county noted that, on one previous occasion in 1976, it

had allowed an applicant to maintain a dog breeding kennel as animal husbandry. Further, the county relied in part on this court's opinion in *Linn County*, 98 Or App at 102, in which we held that a dog kennel operation constituted "animal husbandry" under a pre-1985 version of ORS 215.203:

> "[Linn] County enacted zoning ordinances in 1972 and 1980. The ordinances defined the 'farm use' that was permitted outright in EFU zones as including the 'feeding, breeding, management and sale of * * * livestock, poultry, furbearing animals or honeybees * * * or animal husbandry.' *See* ORS 215.203. They also defined 'kennels,' but made no specific provision about their permissibility in EFU zones. County argues that, although the 1972 and 1980 ordinances did not expressly prohibit the use of EFU land for kennels, they did not permit the use, outright or conditionally. Defendant contends that, in the absence of more specific legislation bearing on the subject, kennel operations constitute 'animal husbandry' and therefore come within the definition of 'farm use.' We agree. 'Animal husbandry' is defined by *Webster's Third New International Dictionary* 85 (1971) as 'a branch of agriculture concerned with the production and care of domestic animals.' "

Like the court in *Linn County*, Crook County apparently applied the *Webster's* definition to its code. The county found that the breeding of dogs involves the production and care of domestic animals, and is therefore animal husbandry under CCC 1.060. That is a perfectly plausible interpretation.

The county's interpretation does not become implausible because of redundancy with other provisions of the code. Redundancy is a fairly common feature of legislative drafting. *Friends of Yamhill County v. Yamhill County*, 229 Or App 188, 194-95, 211 P3d 297 (2009) (so noting). Contrary to petitioner's contention, the county was free to interpret farming to include dog breeding kennels as animal husbandry and to also separately list kennels as permitted uses in other zones, even though farming is permitted in all zones and such a listing would be redundant.

Finally, to the extent that the redundancy in treating dog breeding kennels as animal husbandry and, hence, farming, might be viewed as an inconsistency in the code, the county has expressed its preference for an interpretation that

permits dog breeding kennels as farming. The county stated in its order that it interpreted the exemption of CCC 1.060 as "absolute," which we understand to be a statement of the county's intent that the exemption for farm uses would be broadly construed and would trump other provisions.

Petitioner, as noted, insists that the county's interpretation is implausible because it ignores an express provision of the code ("kennel") and, instead, uses extrinsic sources (*Linn County* and *Webster's*) to define an ambiguous term ("animal husbandry"). We reject that argument for several reasons. First, the "express" provision to which petitioner refers is apparently a combination of the code's definition of "kennel" as including breeding kennels, and the list of permitted uses in RR(M)-2 zones, which does not include kennels. Those provisions, however, do not add up to an express prohibition of breeding kennels. The fact that a list of permitted uses does not include Use X does not mean that Use X is expressly prohibited; if that were the case, we could say that CCC 1973 expressly prohibits, say, used car lots or housing for space aliens. Second, the term "animal husbandry" is not ambiguous. An ambiguous term is one that has multiple plausible meanings; the process of disambiguation requires choosing which of the meanings is operative in any given context. The problem posed by the term "animal husbandry," as used in CCC 1973, is not that a reader cannot discern which of multiple meanings it carries; rather, the problem is that the scope of the term—what it encompasses and does not encompass—is unclear. Using case law and dictionary definitions to clarify the meaning is not disambiguation; it is definition. And third, petitioner's argument is based on an erroneous presumption: that the existence of a stronger or more logical interpretation renders the weaker or less logical interpretation "implausible." That presumption cannot be reconciled with *Siporen*.

For the same reasons, petitioner's argument based on CCC 10.10 is not persuasive. That section requires the county to give effect to the more restrictive provision when two provisions conflict. That preference, however, logically *follows* the interpretative process; before one section can be deemed to be more restrictive than another, we must know what the sections mean. In other words, CCC 10.10 is not an

interpretative aid; it is an aid to be used after interpretation has occurred. In sum, we conclude that LUBA did not err in affirming the county's interpretation of its 1973 code to allow dog kennels in the zone of the subject property.

In her second assignment of error, petitioner argues that the county erroneously admitted, after the close of the hearing record, the testimony of a current county commissioner who was already in office at the time the 1973 ordinance was enacted, and relied on that testimony as a factual basis for its final interpretation. We agree with LUBA that, assuming that the county's consideration of the evidence was error, in view of our standard of review of the county's interpretation, the error was harmless. One of the parts of the county's opinion that refers to the commissioner's statements is as follows:

> "The Court finds that this interpretation [of 'animal husbandry'] is consistent with the express language of Section 1.060, the personal knowledge of the purpose and intent of the 1973 zoning ordinance provided by Commissioner Weberg * * * and the general desire to protect farms and farmland that existed in 1973[.]"

Thus, even if all of the references to the commissioner were excised, as petitioners requested, the county would nonetheless have found that the interpretation of "animal husbandry" that included breeding kennels was "consistent with the express language" of the code—in other words, that the interpretation was *not* inconsistent with *all* of the language in the code. That conclusion alone, with which (as discussed above) we agree, is sufficient to compel us to affirm.

Affirmed.