Argued and submitted January 17, affirmed April 11, 2012

Robert RUDELL
and William Rudell,
*Petitioners,*

*v.*

CITY OF BANDON,
Department of Land Conservation and Development,
and Jocelyn Biro,
*Respondents,*

*and*

Carol A. GOULARTE
and David H. Tjomsland,
*Intervenors-Respondents below.*

Land Use Board of Appeals
2011032; A150018

275 P3d 1010

Bill Kloos argued the cause and filed the brief for petitioners.

Shala McKenzie Kudlac argued the cause for respondent City of Bandon. With her on the brief was Carleton Law Offices.

Erin L. Donald, Assistant Attorney General, argued the cause for respondent Department of Land Conservation and Development. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Jocelyn Biro filed the respondent's brief *pro se.*

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

The City of Bandon denied petitioners' application for a permit to build a house on their property near the beach because, according to the city, the property was located on the leeward side of a foredune, where development was prohibited by the Bandon Municipal Code (BMC). Petitioners appealed the city's decision to the Land Use Board of Appeals (LUBA); after first remanding the case back to the city for further factfinding, LUBA affirmed the city's decision to deny the permit. Petitioners now seek judicial review. In two assignments of error, they argue that LUBA erred in deferring to the city's decision that the property was on a foredune, and second, that the city's interpretation of the term "foredune" was not clear and objective, as required by statute. On judicial review, ORS 197.850, we affirm.

We take the facts, which are undisputed, from LUBA's opinion. Petitioners own two contiguous lots within the city's "shore land overlay" zone, where single family dwellings are a conditional use. The leeward portion of petitioners' property slopes upward from east to west from an elevation of 13 feet above mean sea level at the eastern boundary to 17.5 feet at its western edge. To the west of the property, the slope of the land becomes steeper as it rises to the top of a dune, then falls to the beach and the ocean. Petitioners sought a permit from the city to construct a 2,490 square foot home on the property. The city denied the application, determining that the entire property was located on a foredune, and that, accordingly, development was prohibited by BMC 17.24.040(D): "No structures shall be located on identified foredunes." On appeal to LUBA, the board sustained petitioners' challenge to that finding as inadequate and unsupported by the record because the city's findings did not explain the basis for its conclusion or cite any supporting evidence. *Rudell v. City of Bandon*, 62 Or LUBA 279 (2010) (*Rudell I*). In that initial proceeding, the city's determination was apparently based on a definition contained in a Federal Emergency Management Agency (FEMA) guidance document related to federally subsidized flood insurance. That definition provided that "the inland limit of the [foredune]

occurs at the point where there is a distinct change from a relatively steep slope to a relatively mild slope." 44 CFR § 59.1 (2011).

On remand, the city, for the first time, consulted and interpreted the definition of "foredune" in its own code, BMC 16.42.010, to interpret that term as it is used in the ordinance prohibiting construction on foredunes, BMC 17.24.040(D). The definition provides, " 'Foredune' means the dune closest to the high tide line that extends parallel to the beach. The foredune can be divided into three sections: the frontal area (closest to water); the top surface; and the lee or reverse slope (backside)." Because that definition did not address where the "lee or reverse slope (backside)" of the foredune ends, the city looked to *Webster's Third New Int'l Dictionary* (unabridged ed 2002) to define the terms "lee," "slope," and "reverse slope." Using the definitions of those terms, the city interpreted the "lee or reverse slope (backside)" of a foredune to mean "the area that extends from the top surface to the landward point where the slope ends and the ground becomes relatively level (*i.e.*, horizontal)." Additionally, the city explained in a footnote that it used the term "relatively level" to describe flat or horizontal rather than sloped ground surface elevation, and it used the term "relatively" as a modifier because ground elevation can never be absolutely level. Based on that definition, the city adopted proposed findings drafted by intervenor Department of Land Conservation and Development (DLCD) and denied petitioners' application. LUBA affirmed the city's decision, *Rudell v. City of Bandon*, 64 Or LUBA 201 (2011), and petitioners seek judicial review of that decision, ORS 197.850.

Petitioners, as noted above, raise two assignments of error. First, they argue that LUBA incorrectly deferred to the city's interpretation of "foredune" in the city code. Petitioners contend that LUBA should have applied the definition of "foredune" associated with Statewide Planning Goal 18 (Beaches and Dunes). In their second assignment of error, petitioners contend that the city's interpretation of "foredune" is not a clear and objective standard, as required by ORS 197.307(6) (2009), *amended by* Or Laws 2011, ch 354, § 3 and ORS 227.173(1).

We review LUBA's order to determine whether, as petitioners assert, it is unlawful in substance. ORS 197.850(9)(a). LUBA, in turn, is required under ORS 197.829(1) to affirm a local government's interpretation of its land use regulations, unless LUBA determines that the local government's interpretation:

"(a)  Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b)  Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c)  Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d)  Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements."

Thus, our inquiry on judicial review is whether the city's interpretation of its definition of the term "foredune"—that is, it ends where the land becomes relatively flat—is inconsistent with the items listed in ORS 197.829(1)(a) to (d). *Siporen v. City of Medford*, 349 Or 247, 262, 243 P3d 776 (2010) ("The specific question for the Court of Appeals * * * is: Did LUBA violate the statutory requirement that it affirm a local government's interpretation unless it is 'inconsistent with the express language' of a relevant regulation?").

In their first assignment of error, petitioners contend that the city was not entitled to interpret the definition of "foredune" in BMC 16.42.010 because the text did not raise an ambiguity allowing the city even to subject the definition to an interpretation. The argument, apparently, is that interpretation is permitted only when a term is ambiguous; "foredune" is not ambiguous; and, because the city was not authorized to interpret "foredune," it had to adopt some other definition, either the FEMA definition it used in *Rudell I* or a definition from Statewide Planning Goal 18 (Beaches and Dunes). Alternatively, petitioners argue that, if the definition was ambiguous, then LUBA should not have approved the city's interpretation because that interpretation fails to consider all relevant context, *i.e.*, the statewide planning goals,

the comprehensive plan and plan inventory, DLCD plan acknowledgment reports, and prior development approvals. The city and DLCD respond that the city's interpretation of the definition of "foredune" is necessary, not because the term is ambiguous, but because the scope of the term is undefined. Moreover, they contend that the interpretation is not inconsistent with the city's comprehensive plan or state land use regulations; therefore, LUBA did not run afoul of ORS 197.829.

We begin by addressing petitioners' argument that the definition of "foredune," BMC 16.42.010, did not create an ambiguity about where the foredune ends, and so the plain text was not subject to interpretation by the city. As stated above, the city looked to the definition of "foredune" in BMC 16.42.010, which provides, " 'Foredune' means the dune closest to the high tide line that extends parallel to the beach. The foredune can be divided into three sections: the frontal area (closest to water); the top surface; and the lee or reverse slope (backside)." Using the definitions of "lee", "reverse slope", and "slope" from *Webster's*, the city explained its interpretation of the geographical extent of the "lee or reverse slope (backside)" of the foredune:

> "These dictionary definitions support the city's conclusion that the foredune extends easterly to a point where the ground becomes relatively level or horizontal. The term 'lee' simply refers to the side sheltered from the wind and provides no specific basis for determining the geographic extent of the foredune. Term 'reverse slope' clearly supports a decision that the geographic extent of the foredune is where the slope ceases its descent or declination away from the top surface (*i.e.*, at the bottom of the slope). The term 'slope' clearly supports the same conclusion regarding the geographic extent by describing the term slope in relation to a downward slant or inclination; the ground forming an angle with the plane of the horizon; or deviation from the horizontal or perpendicular. These dictionary definitions of terms used in the BMC definition of 'foredune' support the conclusion that the foredune extends easterly from the top surface of the dune to the point where the slope reaches its lowest elevation and the ground becomes relatively flat or horizontal."

Petitioners argue that, because the definition of foredune is limited to listing its three parts and does not discuss the landward extent of the foredune, there was no ambiguity requiring the city's above interpretation. Petitioners' argument, however, rests on the false premise that only an ambiguity can trigger the need to interpret. That premise cannot be reconciled with our analysis in *Siegert v. Crook County*, 246 Or App 500, 509, 266 P3d 170 (2011), a case in which we allowed the local government to review the dictionary for guidance to interpret the scope of a term in its code even though the meaning of the term was not ambiguous.

In *Siegert*, we determined that a term in the county's code was not ambiguous, yet the code required interpretation because the scope of the term was *uncertain*. 246 Or App at 508-09. In that case, the county applied the *Webster's* definition of "animal husbandry" to interpret the meaning of that term as it was used in the county's zoning code to include a dog breeding kennel. *Id.* at 507-08. We determined that the term "animal husbandry" was not ambiguous because it did not have multiple plausible meanings; rather, "the scope of the term—what it encompasses and does not encompass—[was] unclear[,]" and thus the dictionary definition clarified its meaning. *Id.* at 509. In other words, interpretation is necessary not only to disambiguate a term that has more than one meaning; it is also necessary in order to clarify vagueness. Here, similarly, the city's code clearly defines "foredune," but, even though the terms are not ambiguous, their scope is, without interpretation, indeterminate. The city's use of the dictionary definitions in the present case to clarify the meaning of the code definition is an interpretation for purposes of ORS 197.829.

Petitioners next argue that, if interpretation is necessary, the city's interpretation is "inconsistent with the express language of the comprehensive plan or land use regulation[,]" ORS 197.829(1)(a), because the city failed to examine certain types of context that it was required to examine pursuant to the methodology for statutory analysis in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), as modified by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (we consider the text and context of a statutory provision to discern the intent of the governing

body that adopted the language being examined). According to petitioners, the city should have examined the statewide planning goals, the city's comprehensive plan and plan inventories, the acknowledgement reports prepared by DLCD, and prior development approvals in the immediate residential neighborhood. We note first that the prior development approvals are not before us on this record, and we therefore do not consider petitioners' arguments relative to them.

Petitioners' remaining arguments about the context of the city's definition all rely on the assertion that the contextual documents refer to the area on which petitioners' property is located as "younger stabilized dunes," and that, therefore, the area cannot be a "foredune." We agree that the documents either state or imply that the property is in an area of younger stabilized dunes, but we disagree that this fact compels the conclusion that the property is not also on a foredune.

The Bandon Comprehensive Plan, BMC 17.24.040(D), and the BMC 16.42.010 definition of "foredune," implement Statewide Planning Goal 18 (Beaches and Dunes), which generally prohibits development on beaches, active foredunes, and certain conditionally stable foredunes and interdune areas. The statewide planning goals do not provide a general definition of "foredune," but include a definition of the general term "dune" and definitions of various subcategories of dunes, including three types of foredunes:

> "FOREDUNE, ACTIVE.   An unstable barrier ridge of sand paralleling the beach and subject to wind erosion, water erosion, and growth from new sand deposits. Active foredunes may include areas with beach grass, and occur in sand spits and at river mouths as well as elsewhere.

> "FOREDUNE, CONDITIONALLY STABLE.   An active foredune that has ceased growing in height and that has become conditionally stable with regard to wind erosion.

> "FOREDUNE, OLDER.   A conditionally stable foredune that has become wind stabilized by diverse vegetation and soil development."

Neither the BMC nor the statewide planning goals specify how the boundaries of a foredune are to be identified, and neither the Bandon Comprehensive Plan nor the BMC contains an inventory or other identification of the location of foredunes within the city. The city determines the location of "identified foredunes" as used in BMC 17.24.040(D) on a case-by-case basis.

Petitioners, however, point us to the Bandon Comprehensive Plan and its "Inventory of Coastal Resources" as context that, they argue, contradicts the city's interpretation. The inventory describes the south jetty area as being part of an area of "younger stabilized dunes." Additionally, the comprehensive plan references a dune map, and the south jetty area is marked on the map as "Younger Stabilized Dunes," not as one of the "foredune" types shown on the map legend. Petitioners argue that, because the comprehensive plan and dune map distinguish between types of "foredunes," where residential development is prohibited, and "younger stabilized dunes," where residential development may be approved, and the dune map identifies the south jetty area as "younger stabilized dunes," the area on which petitioners' property is located cannot also be a "foredune."

Petitioners confuse the issues by making distinctions between "dune" terms that are not ultimately relevant to the city's interpretation of "foredune" in its zoning code. Whether a dune is active, stable, younger, or older depends on characteristics such as vegetation, height, and stability. Whether such a dune is a "foredune" has to do with location and orientation relative to the ocean. Thus, as both the city and DLCD explain, a "foredune" and a "younger stabilized dune" are not mutually exclusive categories. The fact that the soil and vegetative characteristics of a dune fit the description of one or more dune subcategories does not mean that the dune is not also a foredune. Thus, a dune can be both a "younger stabilized dune" and fall under the definition of "foredune" as "the dune closest to the high tide line that extends parallel to the beach." Therefore, the city's interpretation of "foredune" is not inconsistent with the express language of the Bandon Comprehensive Plan and relevant land use regulation. Accordingly, we reject petitioners' first assignment of error.

        In their second assignment of error, petitioners challenge the substance of the city's interpretation of BMC 16.42.010 by arguing that the interpretation is not a clear and objective standard as required by ORS 197.307(6) (2009): "Any approval standards, special conditions and the procedures for approval adopted by a local government shall be clear and objective and may not have the effect, either in themselves or cumulatively, of discouraging needed housing through unreasonable cost or delay."[1] Petitioners assert that the city's interpretation of the definition of "foredune" is not clear and objective because the term "relatively flat" is inherently subjective. Petitioners also argue that the city's reliance in its proceeding on remand on a different definition of "foredune" than it relied on in the earlier proceeding violates the requirement imposed by ORS 227.173(1) that the city let applicants know what must be proved in an application for a discretionary permit. ORS 227.173 requires, in part:

> "(1) Approval or denial of a discretionary permit application shall be based on standards and criteria, which shall be set forth in the development ordinance and which shall relate approval or denial of a discretionary permit application to the development ordinance and to the comprehensive plan for the area in which the development would occur and to the development ordinance and comprehensive plan for the city as a whole."

Further, the approval or denial of a discretionary permit application must be based on standards and criteria that are " 'clear enough for an applicant to know what he must show during the application process.' " *State ex rel West Main Townhomes v. City of Medford*, 233 Or App 41, 48, 225 P3d 56 (2009), *modified and adh'd to on recons*, 234 Or App 343, 228 P3d 607 (2010) (quoting *Lee v. City of Portland*, 57 Or App 798, 802, 646 P2d 662 (1982)).

---

[1] "Needed housing" is defined in ORS 197.303(1). That statute provides, in relevant part:

"(1)  As used in ORS 197.307, 'needed housing' means housing types determined to meet the need shown for housing within an urban growth boundary at particular price ranges and rent levels, including at least the following housing types:

"(a)  Attached and detached single-family housing and multiple family housing for both owner and renter occupancy[.]"

The city responds that its standards are clear and objective because the term "relatively" does not alter the fact that petitioners knew when they submitted their application that they could not build on a foredune and that the foredune ended where the land became what appears to an observer to be flat, even though it might still have an imperceptible slope. DLCD responds that the "clear and objective" requirement of ORS 197.307(6) (2009) does not apply to definitions or interpretations of definitions; rather, the statute applies only to approval standards, and petitioners do not challenge the approval standard at issue in this case, BMC 17.24.040(D), which prohibits building structures on foredunes. Additionally, DLCD contends that petitioners' argument that the city's decision violates ORS 227.173 was not preserved because petitioners did not raise this argument on their appeal to LUBA.

Without deciding whether the city's interpretation is an approval standard, we conclude, as LUBA did, that to the extent the city's interpretation of the BMC 16.42.010 definition of "foredune" is subject to analysis under ORS 197.307(6) (2009), the definition as interpreted is sufficiently clear and objective to pass muster under the statute. In *Rogue Valley Assoc. of Realtors v. City of Ashland,* 35 Or LUBA 139, 158 (1998), *aff'd,* 158 Or App 1, 970 P2d 685 (1999), LUBA described the kind of approval standards that violate ORS 197.307(6) (2009):

> " 'Needed housing' is not to be subjected to standards, conditions or procedures that involve subjective, value-laden analyses that are designed to balance or mitigate impacts of the development on (1) the property to be developed or (2) the adjoining properties or community. Such standards, conditions or procedures are not clear and objective and could have the effect of discouraging needed housing through unreasonable cost or delay."

(Some internal quotation marks omitted.)

We are unpersuaded by petitioners' argument that the term "relatively flat" introduces subjectivity to the city's interpretation of "foredune." As the city explained in a footnote to its decision, it used the term "relatively flat" simply as a modifier that acknowledges that no natural terrain is ever

absolutely flat. In addition, LUBA has already held that determining whether land is sloped is a clear and objective inquiry. *See Home Builders Assoc. v. City of Eugene*, 41 Or LUBA 370, 410-11 (2002) (rejecting an argument that a standard prohibiting development on land that meets or exceeds 20 percent slope is not clear and objective, because "the slope of a property is an objectively determinable fact"). Thus, as LUBA concluded, the term does not introduce subjectivity or discretion into the determination of the point where the slope ends. The definition of "foredune" as interpreted by the city is sufficiently clear and objective for purposes of ORS 197.307(6) (2009).

With regards to petitioners' argument that the city's interpretation violates ORS 227.173(1), petitioners assert that they preserved the issue by including it in the "introduction to all assignments of error" section of their briefing to LUBA. However, the argument was not fully developed or referenced in any of petitioners' assignments of error to LUBA. And even if we were to conclude that the claim of error was adequately preserved, we conclude that our resolution of petitioners' arguments related to ORS 197.307(6) (2009) apply with equal force to their claims under ORS 227.173. The standards were not inadequate.

In conclusion, the city's interpretation of the definition of "foredune" in BMC 16.42.010 is not "inconsistent with the express language of the comprehensive plan or land use regulation[,]" ORS 197.829(1)(a), and that interpretation is sufficiently clear and objective for purposes of ORS 197.307(6) (2009) and ORS 227.173(1). Therefore, LUBA did not err in affirming the city's decision denying petitioners' application for a conditional use permit.

Affirmed.