Argued and submitted July 28, reversed and remanded September 10, petition for review denied December 10, 2020 (367 Or 290)

## 1000 FRIENDS OF OREGON,
*Respondent,*

*v.*

## LINN COUNTY,
*Respondent Below,*

*and*

## Ronald HENTHORNE,
Virginia Henthorne, and Lynn Merrill,
*Petitioners.*

Land Use Board of Appeals
2019103, 2019104; A174056

475 P3d 121

Petitioners Ronald Henthorne, Virginia Henthorne, and Lynn Merrill seek judicial review of a final order of the Land Use Board of Appeals (LUBA) that set aside a decision of the Linn County Board of Commissioners approving an application for a zone change and a comprehensive plan amendment. In that order, LUBA reversed a decision by the county approving petitioners' application for a plan amendment and zone change from Farm Forest to Non-Resource 5 Acre Minimum (NR-5) for a 108-acre vacant parcel. It did so because it read two provisions of the county's comprehensive plan to allow for only three potential resource designations for such wildlife habitat, none of which were the NR-5 plan and zone designation. On review, petitioners argue that LUBA legally erred in interpreting the provisions at issue because it did not defer to the county's plausible contrary interpretation. Petitioners also contend that, in any event, the provisions at issue do not impose a categorical prohibition of the use of the NR-5 designation on land mapped as wildlife habitat. *Held*: The county's implicit interpretation of the provisions at issue allow for planning and zoning amendments outside of the three potential resource designations, such as the NR-5 designation, and that interpretation is plausible.

Reversed and remanded.

Wendie L. Kellington argued the cause for petitioners. Also on the brief was Kellington Law Group PC.

Andrew Mulkey argued the cause and filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed and remanded.

## LAGESEN, P. J.

This case is before us on judicial review of a final order of the Land Use Board of Appeals (LUBA) that set aside a decision of the Linn County Board of Commissioners approving an application for a zone change and a comprehensive plan amendment. We reverse and remand because, in concluding that the requested plan amendment and zone change was not authorized, LUBA erroneously failed to defer to the county's plausible interpretation of its own comprehensive plan, as required under *Siporen v. City of Medford*, 349 Or 247, 262, 243 P3d 776 (2010). As a result, LUBA erroneously concluded that the proposed zone change and comprehensive plan amendment were categorically prohibited by two provisions of the county's comprehensive plan.

Petitioners Ronald Henthorne, Virginia Henthorne, and Lynn Merrill seek review of the LUBA final order at issue. In that order, LUBA reversed a decision by the county approving petitioners' application for a plan amendment and zone change from Farm Forest (F/F) to Non-Resource 5 Acre Minimum (NR-5) for a 108-acre vacant parcel. One reason that LUBA reversed the county's decision is that petitioners' property is in an area mapped as big game habitat. LUBA reads two provisions of the county's comprehensive plan to preclude the use of the NR-5 plan and zone designation for such land. Specifically, LUBA reads Linn County Code (LCC) 903.550(A)(1) and LCC 903.510(B)(3), to require that land mapped as wildlife habitat must be designated on the comprehensive plan, and zoned, using one of three resource designations that do not include NR-5.

Before us, petitioners argue that LUBA legally erred in interpreting the provisions at issue because it did not defer to the county's plausible contrary interpretation as required under *Siporen*, 349 Or at 262, and because, in their view, the text and the context of the provisions at issue, regardless of any deference owed to the county, do not impose a categorical prohibition of the use of the NR-5 designation on land mapped as wildlife habitat. Petitioners also contend that LUBA erred in denying their motion to strike evidence from the local record pertaining to the standing of

respondent on appeal, 1000 Friends of Oregon, and to dismiss 1000 Friends' LUBA appeal for lack of standing.

1000 Friends views LUBA's order differently. It responds that LUBA did not interpret the county's plan provisions in the way that petitioners claim that it did and that we should affirm because, in its view, petitioners have not challenged the actual basis for LUBA's decision. 1000 Friends asserts that what LUBA actually addressed was more a matter of timing than a conclusion that land mapped as wildlife habitat could never be designated and zoned NR-5: "LUBA determined that the county was wrong to conclude that it could defer its analysis of the potential impacts of the NR-5 zone on the property's mapped big game habitat." 1000 Friends also argues that the county never interpreted the plan provisions at issue, either implicitly or explicitly, and that, therefore, there was no interpretation to which LUBA was required to defer. Finally, 1000 Friends contends that LUBA was correct to deny petitioners' motion to strike evidence from the local record.

As an initial matter, we reject without further discussion petitioners' contention that LUBA erred in denying their motion to strike evidence from the local record. As LUBA correctly noted, petitioners did not establish that there was any authority for it to grant that particular relief, and petitioners have not identified anything in their brief to us that calls LUBA's judgment on that point into question.

As for the remaining issues, the initial question raised by the parties' arguments is what, exactly, did LUBA decide in the order on review? In particular, did LUBA interpret the county's plan in the manner that petitioners claim that it did, that is, did LUBA's decision hinge in whole or in part on its determination that the county's plan does not permit the use of the NR-5 designation for land mapped as wildlife habitat?

We conclude that it did. 1000 Friends is correct that LUBA *also* construed the county's plan provisions to preclude the county from deferring its analysis regarding the impact of the plan and zone change on wildlife habitat until approval of development is sought. 1000 Friends

additionally is correct to observe that petitioners have not challenged that aspect of LUBA's ruling. That ruling, however, is not the only interpretive ruling that LUBA made. LUBA reversed the county's decision outright and did not remand it to conduct the deferred analysis that LUBA held the county had wrongfully deferred. LUBA took that path because it concluded that the county's plan categorically precludes the use of the NR-5 designation for land mapped as wildlife habitat:

> "We will reverse a land use decision when the decision 'violates a provision of applicable law and is prohibited as a matter of law.' OAR 661-010-0071(1)(c). Intervenors seek a plan amendment and zone change to apply the NR plan and zoning designation to property that is, at least partially, mapped as peripheral big game habitat. In our resolution of the first assignment of error, we concluded the LCC 903.510(B)(3) and LCC 903.550(A)(1) require resource plan and zone designations for property that is mapped big game habitat. Accordingly, changing the plan and zoning designations of property that [is] mapped as a peripheral big game habitat to [the] NR designation is 'prohibited as a matter of law.'"

Thus, petitioners' arguments attack the very legal ruling on which LUBA's disposition turned. If LUBA's resolution of the case rested solely on the timing question, it would have reversed and remanded the county's decision to shore up the deficiencies in its analysis, and it would not have reversed outright.

The next question prompted by the parties' arguments is whether the county, in fact, interpreted the provisions at issue to *not* categorically prohibit the requested plan amendment and zone change. As we have explained, a county's interpretation of an ordinance or plan provision need not be explicit; an interpretation may also be "inherent in the way that [the county] applied the standard." *Alliance for Responsible Land Use v. Deschutes County*, 149 Or App 259, 267, 942 P2d 836 (1997), *rev dismissed as improvidently allowed*, 327 Or 555 (1998). "[T]he test for whether an interpretation is adequate for review is not a formulaic one and is not to be applied rigidly." *Id*. at 266.

Here, it is necessarily implicit in the county's decision to approve petitioners' application for a plan amendment and zone change from F/F to NR-5 that the county interprets its plan to permit the use of designations other than the ones that LUBA determined were allowable. Beyond that, in approving petitioners' application, the county was called upon to address whether the proposal would have a "significant adverse impact on a sensitive fish or wildlife habitat." In so doing, the county identified LCC 903.510 as containing the "*Plan* polices for wildlife areas and habitat," and proceeded to evaluate how petitioners' proposal appeared consistent with the plan objectives of preserving wildlife habitat. Under those circumstances, the county's understanding of its plan is not a matter that is genuinely debatable: The county does not read its plan to impose the categorical prohibition on the use of plan and zone designations that LUBA read into it. There would be no point in conducting the analysis that the county conducted if the county read its plan to impose that type of categorical bar.

The final question is whether the county's reading of the plan provisions at issue to allow for a plan and zone designation other than the specific resource designations listed in LCC 903.510(B)(3) and LCC 903.550(A)(1) is plausible, given the text and context of the provisions. *Sky Lakes Medical Center, Inc. v. Klamath Falls*, 299 Or App 343, 346, 450 P3d 582 (2019) ("Under ORS 197.829(1), LUBA is required to accept a local government's interpretation of its own land use ordinance if that interpretation 'plausibly accounts for the text and context' of the ordinance." (Quoting *Siporen*, 349 Or at 262.)). It is.

LCC 903.510(B)(3) states:

"The major and peripheral habitats are protected from most conflicting uses through application of the Forest Conservation and Management (FCM), Exclusive Farm Use (EFU), and Farm/Forest (F/F) zones. The FCM, EFU, and F/F zones encourage resource activities and limit potentially conflicting uses. Because of the recreational, economic, aesthetic, and ecological value of fish and wildlife, the potential impact on sensitive habitats will be assessed on planning permit applications for conditional uses, variances, and zone and plan amendments. Siting standards,

including the use of setbacks and clustering methods, will be used to lessen impact on habitats."

LCC 903.550(A) states, in part:

"The policies set forth in LCC 903.510(B)(2) to (1) [*sic*] shall be implemented by the following:

"(1)   The Agricultural Resource, Forest Resource, and Farm/Forest plan designations shall be used on the Linn County *Comprehensive Plan* to conserve sensitive fish and wildlife habitats. Land use proposals subject to Linn County review that have undesirable impacts on these resources shall be reviewed during the plan amendment, zone amendment and conditional use permit process."

LUBA's reading of those provisions to bar a plan amendment and zone change to something other than one of the specified resource designations for land mapped as wildlife habitat may be one plausible interpretation of those provisions. But it is not the only one.

As petitioners point out, the references in each provision to plan and zone "amendments" make those provisions ambiguous. Those references make it at least plausible to think that the county intended to allow for amendments away from the specified plan and zone designations. Certainly, one way the provisions reasonably could be read is to (1) require the particular designations for land mapped as wildlife habitat no matter what; and (2) separately require an analysis of wildlife impacts during any of the approval processes described in the provisions, regardless of whether the land at issue is mapped as wildlife habitat.

But another plausible interpretation is the interpretation implicit in the county's approval of petitioners' application. As petitioners argue, the provisions can be read to set forth a two-step process for protecting wildlife resources. Under that reading, the provisions first set the default plan and zoning designations for land mapped as wildlife habitat, designations that the county has concluded operate to protect habitat "from most conflicting uses." The provisions then require the assessment of the impacts on wildlife habitat of any proposed changes to those default designations through plan amendments or zone changes. It is this latter

aspect of each provision—that is, the requirement to assess impacts on wildlife habitats in the context of plan amendments and zone amendments—that makes it plausible to read both provisions as allowing for plan amendments and zone changes away from the specified designations provided the impacts on wildlife are analyzed and addressed in the process so that habitats are not adversely affected by any proposed change.

We have reviewed the context of these provisions and see nothing that undercuts the plausibility of the county's implicit interpretation of these provisions or points definitively to LUBA's proposed interpretation of them. 1000 Friends has not identified anything either; as noted, its arguments, in the main, assert that neither LUBA nor the county interpreted the provisions at issue in the way that petitioners claim. Although the county's interpretation of these provisions is by no means the only reasonable interpretation of them, or even necessarily the strongest one, it is one that plausibly accounts for their text and context. *See Nicita v. City of Oregon City*, 286 Or App 659, 665, 399 P3d 1087, *rev den*, 362 Or 300 (2017) ("'[T]he existence of a stronger or more logical interpretation' does not render a 'weaker or less logical interpretation "implausible."'" (Quoting *Siegert v. Crook County*, 246 Or App 500, 509, 266 P3d 170 (2011).)). Consequently, it is entitled to *Siporen* deference, even if LUBA's interpretation is also a plausible one.

For that reason, LUBA erred when it determined that LCC 903.510(B)(3) and LCC 903.550(A)(1) preclude, as a matter of law, petitioners' requested plan and zone amendments.

Reversed and remanded.